**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA *et al.* *ex rel.* RAHIMI and SCHULTE, Plaintiffs, v. WALGREENS BOOTS ALLIANCE, INC., Defendant. | 15 Civ. 5686 (PAC) **STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL** |

WHEREAS, this Stipulation and Order of Settlement and Dismissal (the "Settlement Stipulation") is entered into among the United States of America (the "Government" or "United States"), by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York; the *qui tam* relators Adam (*a/k/a* Azam) Rahimi and S. Christopher Schulte (together, the "Relators") and their attorneys; and defendant Walgreens Boots Alliance, Inc. ("Walgreens" or "Defendant," and collectively with the Government and the Relators, the "Parties"), by its counsel and authorized representative;

WHEREAS, on or about July 21, 2015, Relators filed the above-captioned action (the "FCA Action") under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and comparable state false claims laws, alleging that Walgreens engaged in a pattern of submitting false claims to Medicare, Medicaid, and TRICARE as well as the workers' compensation program for Postal Service employees managed by the U.S. Department of Labor (collectively, the "relevant federal health programs") that sought payments for more insulin pens of the types relevant here[1] than patients needed in the time periods specified in the claims;

WHEREAS, on or about November 16, 2018, Relators filed an amended complaint,

---

[1]   A list of the types of insulin pens relevant to this Settlement Stipulation, by brand names and by national drug codes, is attached as Exhibit A herein.

which did not substantively modify the allegations in their original complaint;

WHEREAS, contemporaneous with filing this Settlement Stipulation, the Government is filing a complaint-in-intervention (the "US Complaint") to assert claims against the Defendant pursuant to the FCA and in relation to the relevant federal health programs;

WHEREAS, the US Complaint alleges that from on or about January 1, 2006, to on or about December 31, 2017, Walgreens violated the FCA by obtaining reimbursement from the relevant federal health programs for insulin pen prescriptions based on false claims that under-reported the days of supply (*i.e.*, the number of days that insulin pens should last if the patient used insulin strictly according to the prescriber's directions for use); and that, due to this under-reporting, the relevant federal health programs paid for more insulin than certain patients needed. The conduct described in this paragraph shall be defined as the "Covered Conduct" for purposes of this Settlement Stipulation;

WHEREAS, the Parties have, through this Settlement Stipulation, reached a mutually agreeable resolution addressing the Government's claims against Walgreens for the Covered Conduct and the claims that Relators have asserted against Walgreens in this FCA Action; and

WHEREAS, the Relators' claim to a share of the Government's proceeds under this Settlement Stipulation will be the subject of a separate agreement between Relators and the Government.

NOW, THEREFORE, upon the Parties' agreement IT IS HEREBY ORDERED:

## TERMS AND CONDITIONS

1.      The Parties agree that this Court has subject matter jurisdiction over the FCA Action and consent to this Court's exercise of personal jurisdiction over each of them.

2.      Walgreens admits, acknowledges, and accepts responsibility for the following facts:

a.  Insulin "pens" are a common way for diabetic patients, including federal health program beneficiaries, to self-administer insulin. Manufacturers distribute the insulin pens relevant here in tamper-evident cartons containing five individual pens and with labeling approved by the U.S. Food and Drug Administration ("FDA"). Each pen consists of a syringe, which contains 3 milliliters of insulin solution, inside a hard plastic case.

b.  The FDA classifies the insulin pens relevant here as prescription drug products. Pharmacies can only dispense such pens to patients with valid prescriptions from licensed prescribers. Valid insulin prescriptions must set forth the "directions for use," which typically designate both how much insulin to administer (e.g., 10 units) and when to administer it (e.g., at bedtime).

c.  At all relevant times, Walgreens's regular practice was to record the prescribers' "directions for use" in its electronic pharmacy management system – called Intercom Plus or IC+ – and to print out a copy of those directions for patients when they picked up prescription fills. The "directions for use" for insulin recorded in the IC+ system typically referred to "units" of insulin. For almost all of the insulin pens relevant here (i.e., the types in Exhibit A), one milliliter of insulin solution contains 100 units of insulin; one pen (3 ml) contains 300 units of insulin; and each carton (15 ml) contains 1,500 units of insulin.[2] Further, Walgreens's IC+ system recorded the quantity of insulin dispensed by milliliters of insulin solution (e.g., one carton of pens is recorded as 15 ml).

d.  At all relevant times, when Walgreens sought reimbursements for insulin pens from the relevant federal health programs, it was required to report, among other data fields, the quantity dispensed and the days of supply. In pharmacy billing, "quantity dispensed" specifies the amount of medication being dispensed to a patient when she fills her prescription, and "days of supply" refers to the number of days that the quantity of medication dispensed should last if the patient uses the medication strictly according to the directions for use. To calculate days of supply, a pharmacist divides the total quantity of medication being dispensed to a particular patient by that patient's "daily dose," i.e., the amount of medication that the prescriber directs the patient to use each day.

e.  Federal health programs, or pharmacy benefit managers ("PBMs") working on their behalf, typically establish procedures to calculate the date on which a prescription refill would be needed (the "refill due date") based on the date when a patient last filled a prescription and the days of supply reported by the pharmacy for that prior fill. The federal health programs and/or PBMs also typically establish automated processes to deny refill claims too far in advance of the refill

---

[2]    Certain of the insulin pen products listed in Exhibit A contain higher concentrations of insulin and are marketed in packages that contain fewer than five pens of 3 ml each. For instance, two of the Toujeo and Tresiba insulin pen brands, which were not marketed in the United States until 2015, contain 3 pens each and with higher concentration of insulin units per milliliter of insulin solution, and the Toujeo pens each have a capacity of only 1.5 ml.

due dates. The reliability of these procedures and processes depends on the accuracy of the days of supply reported by pharmacies.

f.  According to company policy, Walgreens pharmacists generally are not permitted to dispense a refill too far in advance of the refill due date absent a specific reason. The IC+ system was configured to issue a "refill too soon" warning if a patient requested a refill too far in advance of the refill due date, which the IC+ system calculated based on the date of the last fill and the days of supply.

g.  Until early 2018, Walgreens programmed the IC+ system to define a full carton of five pens as the appropriate minimum package size of the relevant types of insulin pens. This definition prevented Walgreens pharmacists from being able to dispense fewer than five pens at a given time.

h.  Walgreens was aware that certain payors – including federal health programs – had established dispensing limits for prescription drug products in terms of quantity and days of supply and that such payors would deny a claim if the reported days of supply exceeded the payor's days of supply limit.

i.  At all relevant times, when a federal health program denied a claim from Walgreens because the reported days of supply for a full carton of five insulin pens exceeded the federal program's days of supply limit, it was Walgreens's practice to dispense and bill for, the full carton, and reduce the reported days of supply to conform to the program's days of supply limit. Thus, Walgreens repeatedly reported days of supply data to federal health programs that were different from, and lower than, the days of supply calculated according to the standard pharmacy billing formula of dividing the quantity of insulin being dispensed by the daily dose.

j.  As result of this practice, federal health programs approved and paid a substantial number of claims submitted by Walgreens for insulin pen refills that the programs would not have approved if Walgreens had reported the days of supply for previous fills calculated according to the standard pharmacy billing formula of dividing the quantity dispensed by the daily dose. Specifically, the practice of reducing the reported days of supply without changing the quantity of insulin dispensed prevented the federal programs from calculating reliable refill due dates and checking refill claims against those refill due dates.

k.  Similarly, because the "refill too soon" warning within Walgreens's IC+ system also depended on the accuracy of the reported days of supply, the practice of reporting days of supply for certain insulin pens sales based on payors' days of supply limit, instead of the calculation according to the standard pharmacy billing formula of dividing the quantity dispensed by the daily dose, prevented this warning from functioning effectively to notify pharmacists regarding premature refills.

l.  During the relevant times, Walgreens received audit reports in which PBMs acting on behalf of federal health programs sought refunds for insulin pen

prescriptions due to inaccurate days of supply reporting. In early 2018, and after this investigation began, Walgreens modified its IC+ system to provide its pharmacists with the ability to dispense individual insulin pens.

3.      Within twenty (20) days of the Effective Date (defined below in Paragraph 29), Walgreens shall pay to the Government the sum of $168,035,813.56 (the "Settlement Amount"), plus interest, which shall be compounded annually at the rate of 2.87% starting from November 20, 2018, to the date of payment, of which $84,017,906.78, plus 50% of the accrued interest, constitutes restitution to the Government. The payment of the Settlement Amount shall be made in accordance with instructions to be provided by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York.

4.      Subject to the exceptions in Paragraphs 9 and 15 below (concerning excluded claims and bankruptcy proceedings), and conditioned upon Defendant's full compliance with the terms of this Settlement Stipulation, including full payment of the Settlement Amount to the Government pursuant to Paragraph 3 above, the Government releases Walgreens, including its subsidiaries, divisions, corporate predecessors, successors, and assigns, from any civil or administrative monetary claim that the Government has for the Covered Conduct under the FCA, the Civil Monetary Penalties Law, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801–3812, and the common law theories of fraud, payment by mistake, and unjust enrichment. For avoidance of doubt, this Settlement Stipulation does not release any current or former Walgreens officer, director, employee, or agent from liability of any kind.

5.      In consideration of Defendant's obligations in this Settlement Stipulation and the Corporate Integrity Agreement ("CIA") entered into between the Office of Inspector General, the U.S. Department of Health and Human Services ("OIG-HHS") and Defendant, conditioned upon Defendant's full payment of the Settlement Amount, and except as expressly reserved in this Paragraph and in Paragraph 9 (concerning excluded claims), the OIG-HHS agrees to release and

5

refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Defendant under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Defendant from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 9, below.

6.     Walgreens fully and finally releases the Government, its agencies, officers, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Walgreens has asserted, could have asserted, or may assert in the future against the Government, its agencies, officers, employees, servants, or agents related to the Covered Conduct and the Government's investigation, prosecution and settlement thereof.

7.     Conditioned on Defendant's timely payment of the full Settlement Amount pursuant to Paragraph 3 above, Relators, for themselves and all their heirs, successors, attorneys, agents, and assigns, as well as any other person or entity acting on their behalf or asserting their rights, fully and finally release, waive, and forever discharge Defendant, including its subsidiaries, divisions, corporate predecessors, successors, assigns, and transferees, as well as Defendant's current and former officers, directors, employees, attorneys, and other agents, from any claims or allegations that Relators have or may have on behalf of the Government under the FCA for the Covered Conduct, and from any liability, manner of claims, demands, proceedings,

6

liens, and causes of action of any kind or description, whether known or unknown, fixed or contingent, in law or in equity, in contract or tort, under any federal or state statute or regulation, or under common law, or that Relators otherwise would have standing to bring, against Defendant based on the Covered Conduct or the allegations in the FCA Action, including, without limitation, any liability arising from or relating to claims that Relators asserted or could have asserted against Defendant in this FCA Action based on the Covered Conduct or the allegations in the FCA Action; provided, however, that the following claims against Defendant are specifically reserved and not released: (i) Relators' claim for their reasonable expenses and attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d) and comparable provisions of state false claims laws, and (ii) Relators' claims on behalf of the state plaintiffs in this FCA Action.

8.      In consideration of the execution of this Settlement Stipulation by the Relators and the Relators' release as set forth in Paragraph 7 above, Defendant, including its subsidiaries, corporate predecessors, corporate successors, and assigns, as well as all of its current and former officers, directors, employees, attorneys, and other agents, releases Relators and all their successors, heirs, assigns, attorneys, and other agents, from any and all manner of claims, proceedings, liens, and causes of action of any kind or description that Defendant has against Relators related to or arising from the claims in this FCA Action, including, but not limited to, Relators' investigation and prosecution thereof.

9.      Notwithstanding the releases given in Paragraphs 4 and 5 above, or any other term of this Settlement Stipulation, the following claims of the Government (including OIG-HHS) are specifically reserved and are not released by this Settlement Stipulation:

   a.  any liability arising under Title 26, United States Code (Internal Revenue Code);
   b.  any criminal liability;

7

c.  except as explicitly stated in Paragraphs 4 and 5 of this Settlement Stipulation, any administrative liability, including mandatory exclusion from Federal health care programs;

d.  any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.  any liability based upon obligations created by this Settlement Stipulation; and

f.  any liability of individuals.

10.     Walgreens shall be in default of this Settlement Stipulation if it fails to make the required payment set forth in Paragraph 3 above on or before the due date for such payment, or if it fails to comply materially with any other term of this Settlement Stipulation ("Default"). The Government shall provide written notice to Walgreens of any Default in the manner set forth in Paragraph 27 below. Walgreens shall then have an opportunity to cure the Default within ten (10) calendar days from the date of delivery of the notice of Default. In the event that a Default is not fully cured within ten (10) calendar days of the delivery of the notice of Default ("Uncured Default"), interest shall accrue at the rate of 12% per annum compounded daily on the remaining unpaid principal balance of the Settlement Amount, beginning ten (10) calendar days after mailing of the notice of Default. In the event of an Uncured Default, Walgreens shall agree to the entry of a consent judgment in favor of the Government against Walgreens in the amount of the Settlement Amount as attached hereto as Exhibit B. The Government may also, at its option, (a) rescind this Settlement Stipulation and reinstate the claims asserted against Walgreens in the US Complaint; (b) seek specific performance of this Settlement Stipulation; (c) offset the remaining unpaid balance of the Settlement Amount from any amounts due and owing Defendant by any department, agency, or agent of the United States; or (d) exercise any other rights granted by law, or under the terms of this Settlement Stipulation, or recognizable at common law or in equity. Walgreens shall not contest any offset imposed or any collection

undertaken by the Government pursuant to this Paragraph, either administratively or in any Federal or State court. In addition, Walgreens shall pay the Government all reasonable costs of collection and enforcement under this Paragraph, including attorneys' fees and expenses. In the event that the Government opts to rescind this Settlement Stipulation pursuant to this Paragraph, Walgreens shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that relate to the Covered Conduct.

11.     Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Settlement Stipulation; Relators agree and confirm that the terms of this Settlement Stipulation are fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Moreover, the Government and Relators, including Relators' heirs, successors, attorneys, agents, and assigns, agree that they each retain all of their rights pursuant to 31 U.S.C. § 3730(d) on the issue of the share percentage, if any, that Relators should receive of the Settlement Amount.

12.     Defendant waives and shall not assert any defenses that Defendant may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Settlement Stipulation bars a remedy sought in such criminal prosecution or administrative action.

13.     Defendant agrees to cooperate fully and truthfully with the Government's investigation relating to the Covered Conduct of individuals and entities not released in this Settlement Stipulation. Upon reasonable notice, Defendant shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees in such Government

9

investigation, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendant further agrees to, upon request, furnish to the Government complete and un-redacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

14.     Defendant represents and warrants that it has reviewed its financial situation, that it is currently not insolvent as such term is defined in 11 U.S.C. § 101(32) and that it reasonably believes that it shall remain solvent following payment to the Government of the Settlement Amount.  Further, the Parties warrant that, in evaluating whether to execute this Settlement Stipulation, they (a) have intended that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Defendant, within the meaning of 11 U.S.C. § 547(c)(1); and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendant was or became indebted on or after the date of this Settlement Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

15.     If within 91 days of the Effective Date of this Settlement Stipulation or any payment made under this Settlement Stipulation, Defendant commences any case, action, or other proceeding under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors, or a third party commences any case, action, or other proceeding under any law related to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking an order for relief of

Defendant's debts, or seeking to adjudicate Defendant as bankrupt or insolvent; or (b) seeking

appointment of a receiver, trustee, custodian, or other similar official for Defendant or for all or

part of Defendant's assets, Defendant agrees as follows:

    a. Defendant's obligations under this Settlement Stipulation may not be avoided pursuant to 11 U.S.C. § 547, and Defendant shall not argue or otherwise take the position in any such case, action, or proceeding that (i) Defendant's obligations under this Settlement Stipulation may be avoided under 11 U.S.C. § 547; (ii) Defendant was insolvent at the time this Settlement Stipulation was entered into; or (iii) the mutual promises, covenants, and obligations set forth in this Settlement Stipulation do not constitute a contemporaneous exchange for new value given to Defendant.

    b. If any of Defendant's obligations under this Settlement Stipulation is avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the Government, at its option, may rescind the release in this Settlement Stipulation and bring any civil and/or administrative claim, action, or proceeding against Defendant for the claims that would otherwise be covered by the release in Paragraph 5 above. Defendant agrees that (i) any such claim, action, or proceeding brought by the Government would not be subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the case, action, or proceeding described in the first sentence of this Paragraph, and Defendant shall not argue or otherwise contend that the Government's claim, action, or proceeding is subject to an automatic stay; (ii) Defendant shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any claim, action, or proceeding that is brought by the Government within 60 calendar days of written notification to Defendant that the release has been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the date the FCA Action was filed; and (iii) the Government has a valid claim against Defendant in the amount of the Settlement Amount and the Government may pursue its claim in the case, action, or proceeding described

in the first sentence of this Paragraph, as well as in any other case, action, or proceeding.

c. Defendant acknowledges that the agreements in this Paragraph are provided in exchange for valuable consideration as provided in this Settlement Stipulation.

16. Defendant agrees to the following:

a. Unallowable Costs Defined: All costs (as defined in the Office of Management and Budget ("OMB") Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards published at 2 C.F.R. §§ 200 *et seq.*; the Department of Health and Human Services adoption of the OMB Guidance provided at 45 C.F.R. § 75, subpart E *et seq.*; the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47 where applicable; or otherwise as specified by federal statutes, regulations or the terms and conditions of a Federal award) incurred by or on behalf of Defendant, including its present or former officers, directors, employees, and agents, in connection with:

(1) the matters covered by this Settlement Stipulation;

(2) the United States' audit(s) and civil investigation(s) of matters covered by this Settlement Stipulation;

(3) Defendant's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with matters covered by this Settlement Stipulation (including attorneys' fees);

(4) the negotiation and performance of this Settlement Stipulation;

(5) any payment Defendant makes to the United States pursuant to this Settlement Stipulation and any payment Defendant may make to Relators, including expenses, costs and attorneys' fees; and

(6) the negotiation of, and obligations undertaken pursuant to, the CIA to (i) retain an independent review organization to perform annual review described in section III of the CIA, and (ii) prepare and submit reports to the OIG-HHS;

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as "Unallowable Costs").

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by Defendant, and Defendant shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Settlement Stipulation, Defendant shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs (as defined in this Paragraph) included in payments previously sought by Defendant from the United States. Defendant agrees that the United States, at a minimum, shall be entitled to recoup from Defendant any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. Any payments due shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The Government, including the Department of Justice and/or the affected agencies, reserves its right to audit, examine, or re-examine Defendant's books and records and to disagree with any calculation submitted by Defendant or any of their subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendant, or the effect of any such Unallowable Costs on the amounts of such payments.

d. Nothing in this Settlement Stipulation shall constitute a waiver of the rights of the Government to audit, examine, or re-examine Defendant's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

17.    The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (*e.g.*, Medicare

Administrative Contractor, fiscal intermediary, carrier) related to the Covered Conduct; and Defendant agrees not to resubmit to any Medicare contractor any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

18.     Defendant agrees that it waives and shall not seek payment for any of the health care billings covered by this Settlement Stipulation from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

19.     This Settlement Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity except as otherwise provided herein.

20.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Settlement Stipulation; provided, however, nothing in this Settlement Stipulation shall preclude Relators from seeking to recover their expenses or attorneys' fees and costs from Defendant, pursuant to 31 U.S.C. § 3730(d) or comparable provisions of state false claims laws.

21.     Upon receipt of the payment described in Paragraph 3 above, the US Complaint shall be deemed dismissed in full and the Relators' amended complaint shall be dismissed in part. As to the Government, the dismissal shall be with prejudice only as to claims for the Covered Conduct that are being released pursuant to this Settlement Stipulation and shall be without prejudice as to all other claims and conduct. As to the Relators, all federal claims in their complaint shall be dismissed with prejudice except for Relators' claims pursuant to 31 U.S.C. § 3730(d) for (i) expenses, costs and attorneys' fees against Defendant and (ii) a share of the Settlement Amount received by the Government. Nothing in this Paragraph shall be

construed to effect dismissal of Relators' claims pursuant to 31 U.S.C. § 3730(d) for expenses, costs, and fees from Defendant or for a share of the Settlement Amount received by the Government or any of their state claims under state false claims laws.

22.  The Court shall retain jurisdiction over this Settlement Stipulation to enforce the Parties' obligations pursuant to this Settlement Stipulation.

23.  Any failure by the Government to insist upon the full or material performance of any of the provisions of this Settlement Stipulation shall not be deemed a waiver of any of the provisions hereof, and the Government, notwithstanding that failure, shall have the right thereafter to insist upon the full or material performance of any and all of the provisions of this Settlement Stipulation.

24.  This Settlement Stipulation is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Settlement Stipulation is the United States District Court for the Southern District of New York.  For purposes of construing this Settlement Stipulation, it shall be deemed to have been drafted by all Parties to this Settlement Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

25.  The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Settlement Stipulation on behalf of the persons and the entities indicated below.

26.  This Settlement Stipulation is binding on Defendant's successor entities as well as Relators' successors, transferees, heirs, and assigns.

27.  Any notice pursuant to this Settlement Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be delivered by hand, express courier, or e-mail transmission followed by postage-prepaid mail, and shall be addressed as follows:

TO THE GOVERNMENT:

LI YU
JESSICA JEAN HU
Assistant United States Attorneys
United States Attorney's Office
86 Chambers Street, Third Floor
New York, NY 10007
Tel.  (212) 637-6559/2776
Email:  Li.Yu@usdoj.gov
        Jessica.Hu@usdoj.gov

TO WALGREENS:

John Kiernan, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
Tel.  (212) 909-6692
Email:  Jskiernan@debevoise.com

Stephen A. Warnke, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036
Tel.  (212) 841-0681
Email:  Stephen.Warnke@ropesgray.com

TO RELATORS:

Shelley R. Slade, Esq.
Vogel Slade & Goldstein LLP
1300 Connecticut Ave., N.W., Suite 701
Washington, D.C. 20036-1749
Telephone:  (202) 537-5903
Email: sslade@vsg-law.com

28.    This Settlement Stipulation may be executed in counterparts, each of which

constitutes an original and all of which constitute one and the same Settlement Stipulation.  E-

mails that attach signatures in PDF form or facsimiles of signatures shall constitute acceptable,

binding signatures for purposes of this Settlement Stipulation.

29.     The effective date of this Settlement Stipulation is the date on which it is entered on the docket for the FCA Action after having been approved by the Court (the "Effective Date").

30.     This Settlement Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof.  This Settlement Stipulation may not be amended except by written consent of the Parties.

*For the Government*:

GEOFFREY S. BERMAN
United States Attorney

By: _____
       LI YU
       JESSICA JEAN HU
       Assistant United States Attorneys
       86 Chambers Street, 3rd Floor
       New York, New York  10007

DATED: January 11, 2019
              New York, New York


Office of the Inspector General, the U.S.
Department of Health and Human Services

By: _____
       LISA M. RE
       Assistant Inspector General
          for Legal Affairs

DATED: December 20, 2018
              Washington, D.C.

*For Defendant*:

DEBEVOISE & PLIMPTON LLP


By: _____
       JOHN KIERNAN, ESQ.
       KRISTIN KIEHN, ESQ.
       919 Third Avenue
       New York, NY 10022


DATED: December ___, 2018
              New York, New York


ROPES & GRAY LLP


By: _____
       STEPHEN A. WARNKE, ESQ.
       LAURA HOEY, ESQ.
       1211 Avenue of the Americas
       New York, NY 10036

DATED: December ___, 2018
              New York, New York


By: _____
       ELENA KRAUS
       Senior Vice President & General Counsel
       Walgreen Co.


DATED: December ___, 2018
              Deerfield, Illinois

29.    The effective date of this Settlement Stipulation is the date on which it is entered

on the docket for the FCA Action after having been approved by the Court (the "Effective Date").

30.    This Settlement Stipulation constitutes the complete agreement between the

Parties with respect to the subject matter hereof.  This Settlement Stipulation may not be

amended except by written consent of the Parties.

<div style="display: flex; justify-content: space-between;">

<div>

*For the Government*:

GEOFFREY S. BERMAN
United States Attorney

By: _____
    LI  YU
    JESSICA JEAN HU
    Assistant United States Attorneys
    86 Chambers Street, 3rd Floor
    New York, New York  10007

DATED: December __, 2018
        New York, New York


Office of the Inspector General, the U.S.
Department of Health and Human Services

By: _____
    LISA M. RE
    Assistant Inspector General
        for Legal Affairs

DATED: December __, 2018
        Washington, D.C.

</div>

<div>

*For Defendant*:

DEBEVOISE & PLIMPTON LLP

By: _____
    JOHN KIERNAN, ESQ.
    KRISTIN KIEHN, ESQ.
    919 Third Avenue
    New York, NY 10022

DATED: December __, 2018
        New York, New York


ROPES & GRAY LLP

By: _____
    STEPHEN A. WARNKE, ESQ.
    LAURA HOEY, ESQ.
    1211 Avenue of the Americas
    New York, NY 10036

DATED: December __, 2018
        New York, New York


By: _____
    ELENA KRAUS
    Senior Vice President & General Counsel
    Walgreen Co.

DATED: December __, 2018
        Deerfield, Illinois

</div>

</div>

29.    The effective date of this Settlement Stipulation is the date on which it is entered on the docket for the FCA Action after having been approved by the Court (the "Effective Date").

30.    This Settlement Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof.  This Settlement Stipulation may not be amended except by written consent of the Parties.

*For the Government*:

GEOFFREY S. BERMAN
United States Attorney

By:_____
LI  YU
JESSICA JEAN HU
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York  10007

DATED: December ___, 2018
          New York, New York


Office of the Inspector General, the U.S.
Department of Health and Human Services

By: _____
LISA M. RE
Assistant Inspector General
for Legal Affairs

DATED: December ___, 2018
          Washington, D.C.

*For Defendant*:

DEBEVOISE & PLIMPTON LLP

By:_____
JOHN KIERNAN, ESQ.
KRISTIN KIEHN, ESQ.
919 Third Avenue
New York, NY 10022

DATED: December ___, 2018
          New York, New York


ROPES & GRAY LLP

By:_____
STEPHEN A. WARNKE, ESQ.
LAURA HOEY, ESQ.
1211 Avenue of the Americas
New York, NY 10036

DATED: December 17, 2018
          New York, New York


By: _____
ELENA KRAUS
Senior Vice President & General Counsel
Walgreen Co.

DATED: December ___, 2018
          Deerfield, Illinois

29.     The effective date of this Settlement Stipulation is the date on which it is entered

on the docket for the FCA Action after having been approved by the Court (the "Effective Date").

30.     This Settlement Stipulation constitutes the complete agreement between the

Parties with respect to the subject matter hereof.  This Settlement Stipulation may not be

amended except by written consent of the Parties.

*For the Government*:

GEOFFREY S. BERMAN
United States Attorney

By: _____
        LI YU
        JESSICA JEAN HU
        Assistant United States Attorneys
        86 Chambers Street, 3rd Floor
        New York, New York  10007

DATED: December __, 2018
            New York, New York


Office of the Inspector General, the U.S.
Department of Health and Human Services

By: _____
        LISA M. RE
        Assistant Inspector General
            for Legal Affairs

DATED: December __, 2018
            Washington, D.C.


*For Defendant*:

DEBEVOISE & PLIMPTON LLP

By: _____
        JOHN KIERNAN, ESQ.
        KRISTIN KIEHN, ESQ.
        919 Third Avenue
        New York, NY 10022

DATED: December __, 2018
            New York, New York


ROPES & GRAY LLP

By: _____
        STEPHEN A. WARNKE, ESQ.
        LAURA HOEY, ESQ.
        1211 Avenue of the Americas
        New York, NY 10036

DATED: December __, 2018
            New York, New York


By: _____
        ELENA KRAUS
        Senior Vice President & General Counsel
        Walgreen Co.

DATED: December 14, 2018

17

*Relators*:

By: _____
ADAM (*a/k/a* AZAM) RAHIMI
*Qui Tam* Relator


DATED: December 15, 2018
Herndon, Va 20171

By: _____
S. CHRISTOPHER SCHULTE
*Qui Tam* Relator


DATED: December 16, 2018


*Relators' Counsel*:

VOGEL SLADE & GOLDSTEIN LLP

By: _____
SHELLEY R. SLADE, ESQ.
1300 Connecticut Ave., N.W., Suite 701
Washington, D.C. 20036-1749


DATED: December 18, 2018
Washington, D.C.


SO ORDERED:
~~December~~ ___, 2018   January 16, 2019

_____
HON. PAUL A. CROTTY, U.S.D.J.

18

<u>Exhibit A</u>

**Insulin Pen Brands Relevant to the Settlement Stipulation**

| Brand Name | National Drug Code |
|---|---|
| APIDRA | 00088250205 |
| HUMALOG | 00002771227 |
| HUMALOG | 00002879759 |
| HUMALOG | 00002879859 |
| HUMALOG | 00002879959 |
| HUMALOG | 00002751659 |
| HUMALOG | 00002872559 |
| HUMALOG | 00002879459 |
| HUMULIN | 00002880359 |
| HUMULIN | 00002882427 |
| HUMULIN | 00002880559 |
| LANTUS | 00088221905 |
| LANTUS | 00088222052 |
| LANTUS | 00088222060 |
| LEVEMIR | 00169643910 |
| LEVEMIR | 00169643810 |
| NOVOLOG | 00169369619 |
| NOVOLOG | 00169633910 |
| NOVOLOG | 00169330312 |
| TOUJEO | 00024586903 |
| TRESIBA | 00169255013 |
| TRESIBA | 00169266015 |

**Exhibit B**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA *et al.*
*ex rel.* RAHIMI and SCHULTE,

Plaintiffs,

v.

WALGREENS BOOTS ALLIANCE, INC.,

Defendant.

15 Civ. 5686 (PAC)

**CONSENT JUDGMENT**

Upon the consent of Plaintiff the United States and Defendant Walgreens Boots Alliance, Inc. ("Defendant,"), it is hereby

ORDERED, ADJUDGED and DECREED:  that Plaintiff the United States is awarded judgment in the amount of $168,035,813.56 as against Defendant, as well as post-judgment interest at the rate of 12% per annum compounded daily.

Agreed to by:

*For the Government*:

GEOFFREY S. BERMAN
United States Attorney

By: _____
LI YU
JESSICA JEAN HU
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York  10007

*For Defendant*:

DEBEVOISE & PLIMPTON LLP

By: _____
JOHN KIERNAN, ESQ.
KRISTIN KIEHN, ESQ.
911 Third Avenue
New York, NY 10022

ROPES & GRAY LLP

By: _____
STEPHEN WARNKE, ESQ.
1211 Avenue of the Americas
New York, NY 10036

SO ORDERED:

_____ __, 201_

_____
HON. PAUL A. CROTTY, U.S.D.J.

21