IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

United States of America *ex rel.* Adam Rahimi and
S. Christopher Schulte; State of California *ex rel.*
Adam Rahimi and S. Christopher Schulte; State of
Colorado *ex rel.* Adam Rahimi and S. Christopher
Schulte; State of Connecticut *ex rel.*
S. Christopher Schulte; State of Delaware *ex rel.*
Adam Rahimi and S. Christopher
Schulte; District of Columbia *ex rel.* Adam Rahimi
and S. Christopher Schulte;
State of Florida *ex rel.* Adam Rahimi and S.
Christopher Schulte; State of Georgia *ex rel.*
Adam Rahimi and S. Christopher Schulte;
State of Hawaii *ex rel.* Adam Rahimi and S.
Christopher Schulte; State of Illinois *ex rel.*
Adam Rahimi and S. Christopher Schulte;
State of Indiana *ex rel.* Adam Rahimi and S.
Christopher Schulte; State of Iowa *ex rel.* Adam
Rahimi and S. Christopher Schulte; State of
Louisiana *ex rel.* Adam Rahimi and S. Christopher
Schulte; State of Maryland *ex rel.* Adam Rahimi and
S. Christopher Schulte; Commonwealth of
Massachusetts *ex rel.* Adam Rahimi and
S. Christopher Schulte; State of Michigan
*ex rel.* Adam Rahimi and S. Christopher Schulte;
State of Minnesota *ex rel.* Adam Rahimi and
S. Christopher Schulte; State of Montana *ex rel.*
Adam Rahimi and S. Christopher Schulte; State
of Nevada *ex rel.* Adam Rahimi and S. Christopher
Schulte; State of New Jersey *ex rel.* Adam Rahimi
and S. Christopher Schulte; State of New Mexico
*ex rel.* Adam Rahimi and S. Christopher Schulte;
State of New York *ex rel.* Adam Rahimi and S.
Christopher Schulte; State of North
Carolina *ex rel.* Adam Rahimi and
S. Christopher Schulte; State of Oklahoma *ex rel.*
Adam Rahimi and S. Christopher Schulte;
State of Rhode Island *ex rel.* Adam Rahimi and
S. Christopher Schulte; State of Tennessee
*ex rel.* Adam Rahimi and S. Christopher Schulte;
State of Texas *ex rel.* Adam Rahimi
and S. Christopher Schulte; Commonwealth of
Virginia *ex rel.* Adam Rahimi and S. Christopher
Schulte; and

**FIRST AMENDED
COMPLAINT**

Civil No. 15-CV-5686 (PAC)

<u>**FILED UNDER SEAL
PURSUANT TO
31 U.S.C. § 3730(b)**</u>

**JURY TRIAL
REQUESTED**

**State of Washington *ex rel.* Adam Rahimi
and S. Christopher Schulte,**

                  **Plaintiffs,**

**v.**

**Walgreen Boots Alliance, Inc.,**

                  **Defendant.**

## COMPLAINT
(False Claims Act)

SUMMARY STATEMENT ................................................................................................ 4

JURISDICTION AND VENUE ...................................................................................... 7

THE PARTIES................................................................................................................ 8

    Relators .................................................................................................................. 8

    Plaintiff United States of America................................................................... 9

    State Plaintiffs....................................................................................................... 9

    The Defendant....................................................................................................... 11

GOVERNMENT HEALTH PROGRAMS' COVERAGE OF PRESCRIPTION DRUGS
................................................................................................................................ 11

    Medicare Part D .................................................................................................. 11

        Federal Reimbursement for Part D Pharmacy Claims ............................. 14

    TRICARE/CHAMPUS ....................................................................................... 16

    VA Health Benefits Programs ......................................................................... 17

    The Federal Employee Health Benefits Program ....................................... 17

    Medicaid ............................................................................................................... 18

        Federal Medicaid Law ................................................................................... 18

        State Medicaid Coverage Requirements: Prescriptions and Dispensing ................ 19

        Submitting Claims for Drugs Covered by State Medicaid Programs ...................... 23

THE FRAUDULENT SCHEME.................................................................................... 26

DAMAGES..................................................................................................................... 36

COUNT ONE ................................................................................................................. 37

COUNT TWO ................................................................................................................ 38

COUNT THREE ............................................................................................................ 38

COUNT FOUR .............................................................................................................. 39

COUNT FIVE ................................................................................................................ 39

COUNT SIX .................................................................................................................. 40

COUNT SEVEN ............................................................................................................ 40

COUNT EIGHT ............................................................................................................. 41

COUNT NINE ............................................................................................................... 42

COUNT TEN ................................................................................................................. 42

COUNT ELEVEN ......................................................................................................... 43

COUNT THIRTEEN ........................................................................................... 44

COUNT FOURTEEN ......................................................................................... 45

COUNT FIFTEEN .............................................................................................. 45

COUNT SIXTEEN ............................................................................................. 46

COUNT SEVENTEEN ....................................................................................... 46

COUNT EIGHTEEN .......................................................................................... 47

COUNT NINETEEN .......................................................................................... 47

COUNT TWENTY ............................................................................................. 48

COUNT TWENTY-ONE .................................................................................... 49

COUNT TWENTY-TWO ................................................................................... 49

COUNT TWENTY-THREE ................................................................................ 50

COUNT TWENTY-FOUR ................................................................................. 50

COUNT TWENTY-FIVE ................................................................................... 51

COUNT TWENTY-SIX ..................................................................................... 51

COUNT TWENTY-SEVEN ............................................................................... 52

COUNT TWENTY-EIGHT ............................................................................... 53

COUNT TWENTY-NINE .................................................................................. 53

PRAYER FOR RELIEF ..................................................................................... 54

DEMAND FOR JURY TRIAL .......................................................................... 54

## SUMMARY STATEMENT

1.      This lawsuit involves tens of millions of dollars in false claims that the Defendant pharmacy chain, Walgreen Boots Alliance, Inc. ("Walgreen"), knowingly has submitted to federal and state health care programs for excessive quantities of insulin that have not been prescribed by a physician.  Insulin is the medication used on a daily basis by a majority of the 29.1 million American diabetics to control their blood sugar.  Over 11 million seniors are diagnosed with diabetes.  The federal Medicare program and the federal-state Medicaid program pay for huge quantities of insulin each year: in 2013, for

example, Medicare Part D beneficiaries incurred total costs of more than $6.5 billion for insulin products.

2.      Federal and state health care programs such as Medicare Part D ("Medicare"), Medicaid, the Federal Employees Health Benefits Program ("FEHBP"), the United States Department of Veterans Affairs ("VA") health care program, and the TRICARE/CHAMPUS program, do not cover insulin when it is unnecessary, dispensed in amounts that exceed the quantities prescribed by the patient's health care practitioner, or dispensed in quantities that exceed the limitations on "days' supply" established by federal health care program payment rules.

3.      Prior to April 2018, Walgreen's pharmacies dispensed certain pre-loaded "insulin pen" devices only in cartons containing five, 3-milliliter pens per box.  Walgreen did not open the insulin pen cartons to extract individual pens for dispensing.  When billing government health plans and other insurance for medication, Walgreen, like other pharmacies, must accurately report the days' supply to government health plans and other insurers.  The "days' supply" is the number of days the medication will last when taken according to the prescriber's daily dose instructions.  Insurance requirements and industry standards require pharmacies to compute the days' supply using the formula: quantity dispensed divided by prescriber's daily dose = days' supply.  Walgreen did not always use this formula to compute and report the days' supply of insulin pens to government health plans and other insurance.  Rather, when the quantity of insulin in the insulin pen cartons dispensed by Walgreen exceeded the maximum days' supply that insurance would cover for a single fill of medication (typically 30 or 90 days), Walgreen would falsely inform government health plans and other insurers that the days' supply that had been dispensed

equaled the maximum days' supply,   As a result, the quantity of insulin dispensed often significantly exceeded what the doctor had ordered for the purported "days' supply," sometimes being more than five times what the doctor had ordered.   Moreover, because Walgreen employs "automatic refill" practices for Medicare Part D and many managed care beneficiaries and makes "refill reminder" calls for beneficiaries taking medications for chronic conditions, Walgreen commonly refilled insulin pen prescriptions substantially prior to the date when the patient would have used up the insulin previously dispensed.

4.      Until April 2018, Walgreen dispensed excessive amounts of insulin even though there was no legal, safety or payment-based barrier to the pharmacy chain dispensing individual pens to meet the quantities specified in the physician's prescription. Pharmacists outside of Walgreen commonly open insulin pen boxes and dispense individual insulin pens to fill prescribed quantities. The Food & Drug Administration ("FDA") has approved the sale and dispensing of insulin pens in single pen units, including pens removed from 5 pen boxes, and federal and state health care programs pay for insulin based on number of milliliters dispensed, not boxes.

5.      Walgreen falsely represented the days' supply on its insulin pen claims to government and other health insurance in order to obtain payment from insurance. Walgreens falsely certified to government and other health insurance plans that the information on its claims was accurate.

6.      As a result of this scheme, Walgreen earned tens of millions of dollars per year in taxpayer funds for the dispensing of excessive quantities of medication.

7.      *Qui tam* relator S. Christopher Schulte, a pharmacist employed by Walgreen, and *qui tam* relator Adam Rahimi, a pharmacist with an interest in public health

policy (collectively referred to herein as "Relators"), bring this civil action on behalf of and in the name of the United States of America ("United States") under the *qui tam* provisions of the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, and on behalf of and in the name of the state plaintiffs under analogous *qui tam* provisions in state false claims laws.

## JURISDICTION AND VENUE

8.      Count 1 of the Complaint is a civil action by Relators, acting on behalf of and in the name of the United States, against Defendant under the federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA"). This Court has jurisdiction over Count 1 pursuant to 28 U.S.C. §§ 1331 and 1345, and 31 U.S.C. § 3732(a).

9.      Counts 2 through 29 of this Complaint are civil actions by Relators, acting on behalf of and in the name of the various states named as plaintiffs herein, under the false claims laws of such states. This Court has jurisdiction over Counts 2 through 29 under 28 U.S.C. § 1331, because the claims arise under federal law; under 31 U.S.C. § 3732(b), because these Counts arise from the same transactions or occurrences as the claims brought in Count 1; and/or under 28 U.S.C. § 1367, because these Counts form part of the same case or controversy as the claims brought in Count 1.

10.      Defendant Walgreen transacts business in this judicial district. In addition, Defendant Walgreen has engaged in acts in this judicial district that are proscribed under § 3729 of the FCA. Accordingly, this Court has personal jurisdiction over the Defendant, and venue is appropriate in this district pursuant to both 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391.

11.     Relators are unaware of any prior public disclosure of the allegations or transactions set forth in this Complaint, as those terms are used in 31 U.S.C. § 3730(e)(4)(A).

12.     To the extent any allegation set forth in this Complaint may be similar to allegations or transactions that have been publicly disclosed within the meaning of 31 U.S.C. § 3730(e)(4)(A), Relators are permitted to proceed with this lawsuit because each of the Plaintiffs is an "original source" as that term is defined in 31 U.S.C. § 3730(e)(4)(B).

13.     Before filing this lawsuit, Relators voluntarily provided the information set forth herein to the Office of United States Attorney for the Southern District of New York and to the offices of various State Attorneys General.  Moreover, Relators' information set forth herein is independent from, and materially adds to, any public disclosures that may have occurred before Relators disclosed these matters to the federal and state officials.

## THE PARTIES

### Relators

14.     S. Christopher Schulte is a pharmacist employed by Walgreen who has dispensed insulin pens to beneficiaries of Medicare, Medicaid and other federal and state health care programs. He has attempted to dispense insulin pens in the precise quantities prescribed, only to have Walgreen prohibit him from doing so.

15.     Adam Rahimi (also known as "Azam Rahimi") is a pharmacist who resides in Fairfax, Virginia.  He received his doctorate in Pharmacy in 2007 from St. John's University in Jamaica, NY. Upon graduation, he worked as a pharmacy intern and a pharmacist at Walgreen Pharmacy in New York, NY, and Warrenton, VA. He left Walgreen in September 2009 to open an independent pharmacy in Woodbridge, VA. In November 2009, he also began working from his home for Medco Pharmacy, verifying

prescriptions, performing drug utilization and interaction review and overseeing quality control. In August 2010, Relator closed his independent pharmacy in order to have more time for his Medco Pharmacy responsibilities. He left Medco in 2012 to work as a retail pharmacist at a Target Pharmacy in Woodbridge, Virginia. He subsequently has worked at other Target pharmacies, and he is currently a pharmacist at a Target pharmacy in Alexandria, Virginia.

### Plaintiff United States of America

16.     Relators bring Count 1 of this action on behalf of the United States pursuant to the *qui tam* provisions of the federal FCA, 31 U.S.C. §§ 3729–33.

17.     On behalf of the United States, Relators seek recovery for damages to federally-funded health insurance programs from Defendant's insulin pen dispensing scheme, set forth above and below. In particular, Relators allege damages to the Medicare Part D program, established under Title XVIII of the Social Security Act; the federal-state Medicaid program's drug benefit program, established under Title XIX of the Social Security Act; the Federal Employees Health Benefits Plan ("FEHBP"), established under 5 U.S.C §§ 8901–14; the U.S. Department of Defense TRICARE and CHAMPUS health care programs, established pursuant to 10 U.S.C. § 1071 *et seq.*; and the U.S. Department of Veteran's Affairs Health Benefits programs, established pursuant to 38 U.S.C. § 1701 *et seq.*

### State Plaintiffs

18.     Relators bring Counts 2 thorough 29 of this action on behalf of the states of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee,

Texas, Virginia, Washington, and the District of Columbia (the "state plaintiffs"). Specifically, they bring this action under the *qui tam* provisions of the following false claims laws of the state plaintiffs: the California False Claims Act, Cal. Gov't. Code § 12650 *et seq.*; the Colorado False Claims Act, Colo. Rev. Stat. § 25.5-4-303.5 *et seq.*; the Connecticut False Claims Act, Conn. Gen. Stat. § 4-274 *et seq.*; the Delaware False Claims and Reporting Act, 6 Del. Code § 1201 *et seq.*; the Florida False Claims Act, Fla. Stat. Ann. §68.081 *et seq.*; the Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168 *et seq.*; the Hawaii False Claims Act, Haw. Rev. Stat. § 46-171 *et seq.*; the Illinois False Claims Act, 740 Ill. Comp. Stat. 175/1 *et seq.*; the Indiana False Claims and Whistleblower Protection Act, Ind. Code Ann. § 5-11-5.5-1 *et seq.*; the Iowa False Claims Act, Iowa Code § 685.1 *et seq.*; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:437.1 *et seq.*; the Maryland False Health Claims Act, Md. Code Ann., Health-Gen. § 2-601 *et seq.*; the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, § 5A *et seq.*; the Michigan Medicaid False Claims Act, Mich. Comp. Laws § 400.601 *et seq.*; the Minnesota False Claims Act, Minn. Stat. § 15C.01 *et seq.*; the Montana False Claims Act, Mont. Code Ann. § 17-8-401 *et seq.*; the Nevada False Claims Act, Nev. Rev. Stat. § 357.010 *et seq.*; the New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1 *et seq.*; the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.*; the New York False Claims Act, N.Y. State Fin. Law § 187 *et seq.*; the North Carolina False Claims Act, N.C. Gen. Stat. §1-605 *et seq.*; the Oklahoma False Claims Act, Okla. Stat. Ann. tit. 63, § 5053 *et seq.*; the Rhode Island State False Claims Act, R.I. Gen. Laws § 9-1.1-1 *et seq.*; the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*; the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code § 36.001 *et*

*seq.*; the Virginia Fraud Against Taxpayer Act, Va. Code Ann. § 8.01-216.1 *et seq.*; the Washington Medicaid Fraud False Claims Act, Wash. Rev. Code § 74.66.010 *et seq.*; and the District of Columbia False Claims Act, D.C. Code § 2-381.01 *et seq.*

19.     On behalf of the state plaintiffs, Relators seek recovery for the damages to federal-state Medicaid programs, which are jointly funded by the United States and the state plaintiffs, that arose from the Defendant's insulin pen overbilling scheme.

### The Defendant

20.     Defendant Walgreen operates the largest drugstore chain in the United States. As of August 31, 2017, the company operated 8,100 retail locations in all 50 states, with annual net sales of more than $118.21 billion.  The company's net earnings for the fiscal year ending in August 2017 were $4.08 billion. The company is headquartered in Deerfield, Illinois, and incorporated in Delaware. Walgreen's pharmacies dispense prescription medications in this judicial district as well as in each of the other states named as plaintiffs herein.

### GOVERNMENT HEALTH PROGRAMS' COVERAGE OF PRESCRIPTION DRUGS

### Medicare Part D

21.     Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, establishes the Health Insurance for the Aged and Disabled Program, popularly known as Medicare. A person generally is eligible for Medicare coverage if they are 65 years or older, if they have End Stage Renal Disease, or if they are disabled. Among other things, Medicare covers a portion of the costs of certain outpatient medications. Reimbursement for Medicare claims is made by the United States through the Center for Medicare & Medicaid Services ("CMS"), an agency within the Department of Health & Human Services.

22.     In 2003, Congress passed the Medicare Prescription Drug, Improvement, and Modernization Act ("MMA"), Pub. L. 108-173, 117 Stat. 2066, which established a voluntary prescription drug benefit program for Medicare enrollees known as "Medicare Part D." An individual is eligible to enroll in Part D if he or she lives in the service area of a Part D plan and is entitled to Medicare benefits under Part A or is enrolled under Part B. 42 U.S.C. § 1395w-101(a)(3)(A); 42 C.F.R. § 423.30(a). With a few limited exceptions, Medicare did not cover outpatient prescription drugs before the MMA was passed. The new Part D benefits program became effective January 1, 2006. 42 U.S.C. § 1395w-101(a)(2).

23.     Medicare Part D pays for certain outpatient prescription drugs, but only when they are dispensed pursuant to a prescription in accordance with applicable federal and state law. Specifically, Medicare part D covers those drugs (other than drugs reimbursable under Medicare Part A or Part B) that may be dispensed only upon a prescription and that are described in the payment provision of the Medicaid statute. *See* 42 U.S.C. § 1395w-102(e) (defining "Covered Drug" by reference to 42 U.S.C. § 1396r-8(k)(2), which defines "Covered Outpatient Drug" for the purposes of Medicaid). As described more fully below, the Medicaid payment provisions restrict payment to reimbursement for drugs that, among other things, "may be dispensed only upon prescription," 42 U.S.C. § 1396r-8(k)(2), and define the term "prescribed drug" to include only those drugs that are "(1) [p]rescribed by a physician or other licensed practitioner of the healing arts within the scope of his professional practice as defined and limited by Federal and State law; (2) [d]ispensed by licensed pharmacists and licensed authorized practitioners in accordance with the state Medical Practice Act; and (3) [d]ispensed by the

licensed pharmacist or practitioner on a written prescription that is recorded and maintained in the pharmacist's or practitioner's records." 42 C.F.R. § 440.120(a) (interpreting and implementing 42 U.S.C. § 1396r-8(k)(2)).

24.    To administer the Part D program, CMS contracts with private entities known as Part D "plan sponsors" to provide Part D benefits to beneficiaries. As a condition of receiving Part D funds, the plan sponsors must agree to comply with the applicable requirements and standards of the Part D program, as well as the terms and conditions of payment governing the Part D program. 42 U.S.C. § 1395w-112. Plan sponsors must also certify in their contracts with CMS that they agree to comply with all federal laws and regulations designed to prevent fraud, waste, and abuse. 42 C.F.R. § 423.505(h)(1).

25.    CMS also mandates that the Part D sponsors affirmatively require the pharmacies in their networks to agree by contract to perform services in a manner that is consistent with and complies with the Part D sponsor's contractual obligations; and to comply with all applicable federal laws, regulations, and CMS instructions, and with all federal laws and regulations designed to prevent fraud, waste, and abuse. 42 C.F.R. § 423.505(i)(4)(iii), (v). These applicable laws and regulations include, among other things, the provisions of the Social Security Act (cited above) that specify the meaning of the term "prescribed drug" when used in the context of claiming benefits from the Medicaid or Medicare program.

26.    Further, CMS requires that the Part D plan sponsors require the pharmacies in their networks to "comply with minimum standards for pharmacy practice as established by the state." 42 C.F.R. § 423.153(c)(1); *see also* 42 C.F.R. § 423.505(b)(6) (requiring the

contracts between CMS and Part D sponsors to mandate compliance with 42 C.F.R. § 423.153(c)(1)).

<u>Federal Reimbursement for Part D Pharmacy Claims</u>

27.     Payment for drugs under Medicare Part D involves a multistep electronic claims process. First, when a pharmacy such as a Walgreen's retail pharmacy dispenses a drug to a Medicare Part D beneficiary, it submits an electronic claim to the beneficiary's Part D plan sponsor, often through a Pharmacy Benefits Manager on contract with the Part D plan. The pharmacy's claim expressly represents that the drug for which reimbursement is being requested was dispensed upon a prescription, that the pharmacy is billing the Medicare Part D program, and that the pharmacy understands that federal and state funds will be used to pay the claim. If and when it reimburses the claim, the Part D plan notifies CMS that a drug has been purchased and dispensed through a document called a Prescription Drug Event ("PDE") record. The PDE includes 37 fields of data about the billed-for drug, including information about the pharmacy where the prescription was filled, the prescriber, the quantity and days' supply, and whether the drug is "covered" under the Part D benefit.

28.     Rather than reimbursing PDEs on a claim-by-claim basis, CMS makes three types of prospective payments to the Part D plan sponsors based on the sponsors' approved bids: (1) a direct subsidy designed to cover the sponsor's cost of providing the benefits; (2) a low-income cost-sharing subsidy; and (3) a reinsurance subsidy. The direct subsidy (a monthly capitated payment) is paid to the Part D plan sponsor in the form of advance monthly payments equal to the Part D plan's standardized bid, risk-adjusted for health status as provided in 42 C.F.R. § 423.329(b), minus a monthly beneficiary premium as determined in 42 C.F.R. § 423.315(b). In other words, CMS pays a monthly sum to the

Part D plan sponsor for each Part D beneficiary enrolled in the plan based on the anticipated costs of treating the patient—costs that were identified in the plan's bid. CMS also makes payments to the Part D plan sponsor to subsidize cost-sharing, such as premiums, by certain low-income, subsidy-eligible individuals as provided in 42 C.F.R. §§ 423.780 and 423.782. Finally, the reinsurance subsidy is paid to the Part D plan sponsor to cover the government's share of the drug costs above an enrollee's catastrophic threshold.

29.     After the close of the plan year, CMS uses the PDE data to determine the Part D sponsor's actual allowable costs. CMS then performs a reconciliation that compares the prospective payments made to the Part D sponsor to the Part D sponsor's actual allowable costs. Based on this reconciliation, CMS calculates final payments and risk-sharing amounts.

30.     Payments to a Part D plan sponsor are conditioned on providing the information to CMS that is necessary for CMS to administer the Part D program and make payments to Part D plan sponsors for qualified prescription drug coverage. 42 C.F.R. § 423.322. CMS's instructions for the submission of Part D prescription PDE claims data state that the data elements of a PDE constitute "information . . . necessary to carry out this subpart" and that CMS relies on the information in all 37 data elements of a PDE record to process payments and validate claims. *See* CMS, Updated Instructions: Requirements for Submitting Prescription Drug Event Data (PDE) (April 27, 2006), *available at* https://www.cms.gov/Medicare/Prescription-Drug-Coverage/Drug CoverageClaimsData/downloads/PDEGuidance.pdf.

31.     Part D sponsors who fail to submit required claims-level information contained in the PDE to CMS risk having to return monthly payments to CMS during

reconciliation. *See* 42 C.F.R. § 423.343(b), (c)(2), (d)(2). In addition, Part D sponsors are responsible for correcting submitted PDE data that they determine to be erroneous. *See* Updated Instructions, *supra*, at 4.

32.     Federal regulations require that the Part D plan sponsor, as a condition of receiving monthly advance payments from CMS, certify to the accuracy, completeness, and truthfulness of the PDE data, and all other data submitted in support of CMS's decisions on payment. 42 C.F.R. § 423.505(k)(1). Likewise, the network pharmacies that submit claims data to Part D plans must certify to the accuracy, completeness, and truthfulness of that data and acknowledge that it will be used for the purpose of seeking federal funds. 42 C.F.R. § 423.505(k)(3).

## TRICARE/CHAMPUS

33.     The United States provides medical care, including pharmacy benefits, to certain current and former members of the armed services and their dependents through the TRICARE and CHAMPUS programs. *See* 10 U.S.C. §§ 1071, 1074g; 32 C.F.R. § 199.21. Under these programs, TRICARE and CHAMPUS beneficiaries have access to a uniform formulary of prescription drugs, which are defined as drugs that by law require a physician's or dentist's prescription. *See* 10 U.S.C. § 1074g; 32 C.F.R. §§ 199.2, 199.21. TRICARE and CHAMPUS coverage extends only to medically necessary services. 32 C.F.R. § 199.4(a)(1)(i). Pharmacy claims for prescriptions filled by TRICARE and CHAMPUS beneficiaries must accurately state the days' supply dispensed. *See* TRICARE Standard Handbook, at 20 (November 2014).[1]

---

[1] *Available at* http://www.tricare.mil/~/media/Files/TRICARE/Publications/Handbooks/TSE_HBK.ashx.

## VA Health Benefits Programs

34.     Through the VA, the United States offers medical benefits to qualified veterans. *See* 38 U.S.C. § 1701; 38 C.F.R. § 17.38(a). These medical benefits include the prescription drugs available under the VA's national formulary system. 38 C.F.R. § 17.38(a)(1)(iii). VA Health Benefits cover medical services only if "it is determined by appropriate healthcare professionals that the care is needed to promote, preserve, or restore the health of the individual and is in accord with generally accepted standards of medical practice." *Id.* § 17.38(b). Electronic claims submitted by non-VA pharmacies for medication reimbursement must include the days' supply of medication dispensed. *See Electronic Claims–Information for Providers*, VA.gov (June 17, 2015), http://www.va.gov/PURCHASEDCARE/programs/providerinfo/provider_info_elecClaims.asp (requiring use of National Council for Prescription Drug Programs ("NCPDP") telecommunications standards when submitting electronic claims); *infra* at 22 (discussing the NCPDP requirements, which include days' supply).

## The Federal Employee Health Benefits Program

35.     To provide health insurance benefits to federal employees, the United States Office of Personnel Management contracts with qualified carriers to offer federal employees a range of health insurance plans. *See* 5 U.S.C. § 8902; *FEHB Program Handbook*, OPM.gov (June 16, 2014), http://www.opm.gov/healthcare-insurance/healthcare/reference-materials/fehb-handbook/. All FEHBP plans provide prescription drug coverage. *See FEHB Program Handbook*, *supra*, http://www.opm.gov/healthcare-insurance/healthcare/reference-materials/reference/health-plans/.

**Medicaid**

Federal Medicaid Law

36.     Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, establishes the joint federal-state Medicaid program created to enable the states to implement medical assistance programs, primarily for the poor and disabled. The United States funds and oversees the Medicaid program through CMS. The state plaintiffs participate in the Medicaid program, under which they pay for pharmaceutical drugs (including insulin) in certain circumstances for Medicaid beneficiaries. Reimbursement for covered drugs is made by each state's Medicaid program agency, which, in turn, seeks reimbursement for a portion of its expenditures from the federal government.

37.     The federal government covers the costs of medications under the Medicaid program only if the drugs are "prescribed drugs," *i.e.*, medications which may be "dispensed only upon prescription." *See* 42 U.S.C. § 1396r-8(k)(2). The term "prescribed drug" is defined by regulation to include drugs that are: "(1) Prescribed by a physician or other licensed practitioner of the healing arts within the scope of this professional practice as defined and limited by Federal and State law; (2) Dispensed by licensed pharmacists and licensed authorized practitioners in accordance with the State Medical Practice Act; and (3) Dispensed by the licensed pharmacist or practitioner on a written prescription that is recorded and maintained in the pharmacist's or practitioner's records." 42 C.F.R. § 440.120(a). Thus, the federal government pays for prescription medications only when they are dispensed in accordance with prescriptions that comply with state law.

38.     Federal law and regulations require that any health care provider who furnishes health care services that may be reimbursed under Medicaid must ensure that, to the extent of his or her authority, those services are provided "only when, and to the extent,

medically necessary" and are "supported by evidence of medical necessity." *See* 42 U.S.C. § 1320c-5(a); 42 C.F.R. § 1004.10.

<u>State Medicaid Coverage Requirements: Prescriptions and Dispensing</u>

39.     Most state Medicaid programs limit coverage to services that are medically necessary.  *See, e.g.*, Cal. Code Regs. tit. 22, § 51303(a) (limiting coverage to "reasonable and necessary" services); Fla. Admin. Code Ann. r. 59G-1.035 (covering only medically necessary services); 130 Mass. Code Regs. § 450.204 ("The MassHealth agency will not pay a provider for services that are not medically necessary . . . ."); 18 N.Y. Comp. Codes R. & Regs. § 500.1(b) (limiting coverage to "medically necessary and appropriate services"). In addition, to ensure that they will be able to obtain federal reimbursement for a portion of their expenditures, the state Medicaid programs likewise cover the costs of medication only when such medication is dispensed "on a prescription," *i.e.*, in conformity with the instructions of a health care practitioner regarding not only the drug name and strength, but also the quantity of medication to be consumed over a set period of time.  *See, e.g.*, Florida Medicaid, Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, ch. 2, at 3 (July 2014) (stating that "Medical and pharmacy boards agree that a prescription's authorization is for the total quantity and duration on the prescription unless specific restriction on the quantity per dispensing are indicated on the prescription);[2] Georgia Dep't of Cmty. Health, Policies and Procedures for Pharmacy Services § 602.4 (Apr. 1, 2015) ("Both the exact quantity and the day supply must be billed to Georgia Medicaid based on the metric decimal quantity prescribed and the prescriber's

---

[2] *Available at* http://portal.flmmis.com/FLPublic/Portals/0/StaticContent/Public/HANDBOOKS/ Prescribed_Drug_Services_Handbook_July_2014.pdf.

exact written directions . . . . Quantities Dispensed: Always submit the quantity prescribed, and submit the exact calculation of day supply per the Prescriber's dosing instructions.");[3] Illinois Medicaid, Handbook for Pharmacy Services, ch. P-204.4 (July 2013) ("Drugs shall, in no event, be dispensed more frequently or in larger amounts than the prescriber ordered without direct prescriber authorization by way of a new prescription order.");[4] Md. Code Regs. 10.03.03.05 ("Prescriptions shall be dispensed at the lower of the quantity prescribed or the maximum days' supply allowed . . . ."); Michigan Dep't of Cmty. Health, Medicaid Provider Manual – Pharmacy § 11.1 (Apr. 1, 2015) ("Prescription quantities are limited to the quantity specified by the prescriber.");[5] Minnesota Department of Human Services, Pharmacy Services Provider Manual (May 6, 2014) ("A prescribed drug must be dispensed in the quantity specified on the prescription unless the pharmacy is using unit dose dispensing or the specified quantity is not available in the pharmacy when the prescription is dispensed.");[6] Nevada Medicaid and Nevada Check Up Pharmacy Manual, § 3.1 (Mar. 20, 2015) ("Prescriptions must be dispensed pursuant to the orders of a physician or legally authorized prescriber.");[7] N.Y. State Medicaid Program, Pharmacy Manual Policy Guidelines, at 4 (Version 2013-1, September 2013) ("Quantities for prescription drugs shall be dispensed in the amount prescribed.");[8] Rhode Island Medicaid Provider Manual – Pharmacy, Pharmacy Coverage Policy (stating that "[a]ll medication is dispensed on the

---

[3] *Available at* https://www.mmis.georgia.gov/portal/Portals/0/StaticContent/Public/ALL/HANDBOOKS/Pharmacy%20services%202013-04-2015%20144137.pdf.

[4] *Available at* http://www2.illinois.gov/hfs/SiteCollectionDocuments/p200.pdf.

[5] *Available at* http://www.mdch.state.mi.us/dch-medicaid/manuals/MedicaidProviderManual.pdf.

[6] *Available at* http://www.dhs.state.mn.us/main/idcplg?IdcService=GET_DYNAMIC_CONVERSION&RevisionSelectionMethod=LatestReleased&dDocName=id_008992.

[7] *Available at* https://www.medicaid.nv.gov/Downloads/provider/NV_Pharmacy_Manual.pdf.

[8] *Available at* https://www.emedny.org/ProviderManuals/Pharmacy/PDFS/Pharmacy_Policy_Guidelines.pdf.

basis of a written prescription from the prescribing provider" and for "maintenance" medications such as insulin "[t]he original prescription may be dispensed in the quantity that the prescribing provider indicates on the prescription");[9] Texas Vendor Drug Program, Pharmacy Provider Procedure Manual § 5.3.2 (Feb. 1, 2015) ("Providers must dispense the quantity prescribed or ordered by the prescriber . . . .");[10] Virginia Medicaid Pharmacy Manual, ch. 4, at 1 (rev. Jan. 27, 2014) (stating that Virginia's Medicaid program "will pay for a maximum of a 34-day supply of medication per member in accordance with the prescriber's orders and subject to the Board of Pharmacy regulations");[11] Washington Apple Health, Prescription Drug Program Provider Guide, at 20 (Apr. 1, 2015) ("The following practices constitute an abuse of the program and a misuse of taxpayer dollars: . . . Excessive filling – Excessive filling consists of billing for an amount of a drug or supply greater than the prescribed quantity.");[12] Wis. Admin. Code DHS § 107.10(3)(d) ("[L]egend drugs shall be dispensed in the full amounts prescribed . . . .").

40.     The state Medicaid programs also require pharmacies wishing to bill and obtain payment from Medicaid to abide by all applicable federal and state laws. *See, e.g.*, Medi-Cal, Drug Medi-Cal Provider Agreement, at 2, 8 (rev. 9/14) (stating that providers billing Medi-Cal, the state Medicaid program, must agree as a "condition precedent to payment" to comply with all "federal laws and regulations governing and regulating

---

[9] *Available at* http://www.eohhs.ri.gov/ProvidersPartners/ProviderManualsGuidelines/ MedicaidProviderManual/Pharmacy/PharmacyCoveragePolicy.aspx#15.1.
[10] *Available at* http://www.txvendordrug.com/downloads/procedure-manual.pdf.
[11] *Available at* https://www.ecm.virginiamedicaid.dmas.virginia.gov/WorkplaceXT/getContent?vsId= {85176287-60C5-4F6A-81CE-A1DCC3E93144}&impersonate=true&objectType=document&id= {929E01B3-0D22-463F-9D8B-CC3427FEFB2C}&objectStoreName=VAPRODOS1.
[12] *Available at* http://www.hca.wa.gov/medicaid/billing/Documents/guides/prescription_drug_ program_bi.pdf.

Medicaid providers");[13] Fla. Stat. § 409.907(1) (stating that Florida's Medicaid program covers only those goods and services provided in compliance with requirements relating to licensure and applicable federal and state law); Ill. Adm. Code tit. 89, § 140.12(d) (stating that Medicaid pays for goods and services only if providers comply with applicable federal and state laws); Mass. Gen. Laws. ch. 118E, § 36(4) (stating that providers participating in MassHealth, the state Medicaid program, must comply with "all laws, rules and regulations governing the operation of the program"); eMedNY, New York State Medicaid Enrollment Form, at 8 (rev. 05/15) (stating that "[a]s a Medicaid Provider you agree to abide by all applicable Federal and State laws").[14]

41.    In turn, state laws governing the practice of pharmacy require that medication may be dispensed only upon a prescription that states the physician's "directions for use," including the quantity to be taken by the patient on a daily basis. *See, e.g.*, Cal. Bus. & Prof. Code § 4040(a)(1)(B) (prescription must include "[t]he name and quantity of the drug or device prescribed and the directions for use"); Fla. Stat. § 456.42(1) (requiring that a "written prescription for a medicinal drug issued by a health care practitioner" must contain "the quantity of the drug prescribed" and "the directions for use of the drug"); 105 Mass. Code Regs. § 721.020 (stating that every prescription "shall contain . . . the quantity of dosage units" prescribed and "directions for use, including any cautionary statements required"); 225 Ill. Comp. Stat. 85/3(e) (stating that a valid prescription must specify both quantity and directions for use); N.Y. Comp. Codes R. & Regs. tit. 8, § 29.7(a)(1) (pharmacists may not in the course of professional conduct

---

[13] *Available at* https://files.medi-cal.ca.gov/pubsdoco/Publications/masters-other/provappsenroll/24enrollment_DHCS6009.pdf.
[14] *Available at* https://www.emedny.org/info/ProviderEnrollment/ProviderMaintForms/436701_BUSNS_FORM_BusinessEnrlForm.pdf.

"[d]ispens[e] a written prescription which does not bear . . . the . . . quantity of the drug prescribed" or the "directions for use").

42. Many states' Medicaid regulations and program instructions also limit the number of "days' supply" that Medicaid will pay for at a time. *See, e.g.*, Md. Code Regs. 10.03.03.05 ("Prescriptions shall be dispensed at the lower of the quantity prescribed or the maximum days' supply allowed . . . . ");130 Mass. Code Regs. § 406.411(D)(1) ("The MassHealth agency requires that all drugs be prescribed in a 30-day supply, unless the drug is available only in a larger minimum package size . . . ."); Virginia Medicaid Pharmacy Manual, ch. 4, at 1 (rev. Jan. 27, 2014) (stating that Virginia's Medicaid program "will pay for a maximum of a 34-day supply of medication per member in accordance with the prescriber's orders and subject to the Board of Pharmacy regulations").[15]

<u>Submitting Claims for Drugs Covered by State Medicaid Programs</u>

43. Pharmacies enrolled as providers in state Medicaid programs must submit claims in accordance with the state Medicaid programs' policies and procedures.

44. For claims submitted electronically, the Health Insurance Portability and Accountability Act ("HIPAA") requires that pharmacies and state Medicaid programs use the HIPAA-compliant National Council for Prescription Drugs Program ("NCPDP") Telecommunication Standard for electronic claim submission. *See* 42 U.S.C. §§ 1320d-1(a)(3), 1320d-2(a)(2). The Telecommunication Standard consists of an array of defined data fields about the drug claim, including a field called "days' supply," in which the pharmacy is supposed to state the "estimated number of days that the prescription will

---

[15] *Available at* https://www.ecm.virginiamedicaid.dmas.virginia.gov/WorkplaceXT/getContent?vsId=
{85176220-60C5-4F6A-81CE-A1DCC3E93144}&impersonate=true&objectType=document&id=
{929E01B3-0D22-463F-9D8B-CC3427FEFB2C}&objectStoreName=VAPRODOS1.

last." *See* NCPDP Reference Manual, Chapter 3: Flat File Format, at 38 (Oct. 2005).[16] In the states at issue in this case, the NCPDP field for "days' supply" is always required. *See, e.g.*, California Medicaid Management Information System, NCPDP Standard Payer Sheet, at 4 (May 2013);[17] Magellan Medicaid Administration, Florida D.0 Payer Specification, at 6 (May 13, 2011);[18] State of Illinois Department of Healthcare and Family Services, Provider Payor Sheets for NCPDP Version D.0 ECP Input Transactions, at 4 (rev. Dec. 7, 2011);[19] MassHealth, Pharmacy Online Processing System (POPS) Billing Guide, at 8 (Aug. 2013);[20] eMedNY, Standard Companion Guide Transaction Information, at 19 (May 22, 2014).[21]

45.     Likewise, the states in this case that permit paper claims instruct pharmacies to state the days' supply dispensed on the claim. *See, e.g.*, Medi-Cal, Pharmacy Claim Form (30-1) Completion, at 8–9 (March 2009);[22] Florida Medicaid, Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, ch. 3, at 21–22 (July 2014);[23] Illinois Department of Healthcare and Family Services, Handbook for Pharmacy Services,

---

[16] *Available at* http://www.cms.gov/Medicare/Billing/ElectronicBillingEDITrans/downloads/ NCPDPflatfile.pdf.

[17] *Available at* http://files.medi-cal.ca.gov/pubsdoco/Publications/masters-other/5010/NCPDP%20Payer %20Sheet_V5.1.pdf.

[18] *Available at* http://www.fdhc.state.fl.us/medicaid/Prescribed_Drug/pdf/Florida_D0_Payer_ Spec_Final.pdf.

[19] *Available at* http://www2.illinois.gov/hfs/SiteCollectionDocuments/ncpdp_it.pdf.

[20] *Available at* http://www.mass.gov/eohhs/docs/masshealth/pharmacy/pops-billing-guide.pdf.

[21] *Available at* https://www.emedny.org/hipaa/5010/transactions/NCPDP_D.0_Companion_Guide.pdf.

[22] *Available at* https://files.medi-cal.ca.gov/pubsdoco/publications/masters-mtp/part2/pcf30-1comp_p00.doc.

[23] *Available at* http://portal.flmmis.com/FLPublic/Portals/0/StaticContent/Public/HANDBOOKS/. Prescribed_Drug_Services_Handbook_July_2014.pdf.

App'x P-1, at 4, 6 (July 2013);[24] eMedNY, Billing Guidelines – Pharmacy, at 17 (June 28, 2013).[25]

46.    Pharmacies certify the accuracy of the data they submit to state Medicaid programs, such as the "days' supply" stated on the claims form, both when they enroll as providers and when they sign up to bill state Medicaid programs electronically. *See, e.g.*, Florida Medicaid Management Information Systems, Electronic Data Interchange Agreement, at 3 (Nov. 2013);[26] Illinois Department of Healthcare and Family Services, Agreement for Participation in the Illinois Medical Assistance Program, at 2 (April 2014);[27] MassHealth, Trading Partner Agreement, at 1 (Feb. 2011);[28] eMedNY/Medicaid Management Information System, Certification Statement for Provider Billing Medicaid, at 1 (Dec. 2010).[29]

47.    Further, by enrolling as providers in state Medicaid programs, pharmacies also agree to follow all applicable program rules and regulations. *See, e.g.*, Drug Medi-Cal Provider Agreement, *supra*, at 2; Florida Medicaid Management Information Systems, Non-Institutional Medicaid Provider Agreement, at 1 (Aug. 2013);[30] Agreement for Participation in the Illinois Medical Assistance Program, *supra*, at 1; New York State Medicaid Enrollment Form, *supra*, at 1.

---

[24] *Available at* http://www2.illinois.gov/hfs/SiteCollectionDocuments/p200a.pdf.
[25] *Available at* https://www.emedny.org/ProviderManuals/Pharmacy/PDFS/Pharmacy_Billing_ Guidelines.pdf.
[26] *Available at* https://portal.flmmis.com/FLPublic/Portals/0/StaticContent/Public/Public%20Misc%20Files/electronic%20 data%20interchange%20agreement_20131121.pdf
[27] *Available at* http://www2.illinois.gov/hfs/SiteCollectionDocuments/hfs1413.pdf.
[28] *Available at* http://www.mass.gov/eohhs/docs/masshealth/privacy/hipaa-trading-partner.pdf.
[29] *Available at* https://www.emedny.org/info/providerenrollment/ProviderMaintForms/490501_ETIN_ CERT_Certification_Statement_Cert_Instructions_for_Existing_ETINs.pdf.
[30] *Available at* https://portal.flmmis.com/FLPublic/Portals/0/StaticContent/Public/Public%20Misc% 20Files/MPA_Non-Inst.pdf.

## THE FRAUDULENT SCHEME

48.    The scheme in this case involves the dispensing of insulin pen products that are packaged in 5 pen boxes, such as, but not limited to the Lantus Solostar, Apidra Solostar, Levemir Flexpen, Novolog Flexpen, and Humalog Kwikpen. The National Drug Codes ("NDC") for these products are as follows:

- Lantus Solostar: 0088-2219-05
- Apidra Solostar: 0088-2502-05
- Levemir Flexpen: 0169-6439-10
- Novolog Flexpen: 0169-6338-10
- Humalog Kwikpen: 0002-8797-59

49.    Insulin pens are designed to provide diabetic patients with an accurate and convenient way to administer the precise doses of insulin directed by their physician.[31] Each pen comes pre-loaded with a vial containing three milliliters ("mL") of insulin at a concentration of 100 units per mL. Thus, each pen contains 300 units of insulin. The pen can be easily calibrated to deliver the dose appropriate for the patient and each pen can deliver multiple doses. Doses are administered with disposable needles that are discarded after each use. Unlike traditional insulin, an insulin pen does not need to be refrigerated between doses—it can be stored at room temperature for up to 28 days after the first use. Unused pens can be kept in a refrigerator for up to a year.

50.    The manufacturers of insulin pens, such as Sanofi-Aventis (the maker of Lantus and Apidra Solostar), Novo Nordisk (the maker of Levemir and Novolog Flexpen), and Eli Lilly (the maker of Humalog Kwikpen), sell them to pharmacies either as individual pens or in boxes of five pens. Each box contains 15 mL of insulin, or 1,500 units. Each pen

---

[31] Strictly speaking, the products at issue in this case are insulin analogs, which are modified versions of human insulin designed to act more quickly or more slowly than genuine human insulin.

in the box is individually sealed and labeled with the drug's NDC and the pen's individual expiration date.

51.      Insulin pens make up a large and growing portion of the insulin market, and, consequently, federal healthcare program payments for insulin pens are substantial. For instance, in 2013, Medicare Part D beneficiaries incurred total costs of more than $2.5 billion for insulin pens. And in 2014, Medicaid paid more than $320 million for Lantus, Levemir, and Novolog insulin pens. In New York, Medicaid reimbursements for individual pens range from $72 to $78 per 3 mL pen, or $360 to $390 per 15 mL box. *See* N.Y State Dep't of Health, *List of Medicaid Reimbursable Drugs*, at 33, 196, 231, 234, 311 (June 17, 2015), https://www.emedny.org/info/fullform.pdf.

52.      Non-Walgreen pharmacists commonly open insulin pen boxes and dispense individual insulin pens.  Removing the pens from the box does not adversely affect the stability of the insulin product inside the pen.  Inside the boxes, the pens are labelled with their NDC number and an expiration date that is the same as the expiration date stated on the box.  Pursuant to FDA rules, a manufacturer must state an expiration date on a product's packaging that reflects the results of FDA-required stability studies when the product is marketed for dispensing in that particular packaging.  *See* 21 C.F.R. § 211.166 (requiring manufacturer to conduct stability testing to determine product expiration dates, and providing that "evaluation of stability shall be based on the same container closure system in which the drug product is marketed"); 21 C.F.R. §  201.17 (expiration dates shall appear on both "immediate container" and "outer package");   21 C.F.R. § 211.137 (drug products and drug product labels must state expiration dates based on results of stability testing conducted subject to the storage conditions stated on the labeling).

53.     Federal health care programs pay for insulin pens based on the number of milliliters of insulin dispensed, not based on the number of boxes dispensed. *See, e.g.*, Pennsylvania Dep't of Human Servs., *Drug Fee Schedule* (June 17, 2015) (setting a "Payment Rate Per Unit" of "$22.91842 per Milliliter" for Levemir Flexpen);[32] N.Y State Dep't of Health, *List of Medicaid Reimbursable Drugs*, at 33, 196, 231, 234, 311 (June 17, 2015) (stating that the basis of reimbursement for the insulin pen products at issue in this case is "ML");[33] Texas Medicaid/CHIP Vendor Drug Program, *Formulary Drug Search* (June 17, 2015) (stating that Texas Medicaid reimburses for Lantus Solostar based on a package size of 3 mL);[34] Washington State Healthcare Authority, *Current NCPDP Billing Standards*, at 2 (June 17, 2015) (stating that "Injectables that are liquid-filled vials, ampoules, and syringes must be billed as the total number of milliliters (ml) dispensed").[35]

54.     The amount of insulin a practitioner will prescribe for a patient varies widely depending on factors such as the patient's weight and activity level, what type of diabetes the patient has, whether the patient is a child or an adult, and how long the patient has been on insulin therapy. For an adult with type 1 diabetes, total daily dose levels may range from as little as 0.2 units per kilogram per day (about 15 units per day for an 160-pound person) up to 2.5 units per kilogram per day (about 163 units per day for an 160-pound person). Further, the total daily dose is generally divided between two or more injections, which may not be equal in size. Because of the wide range of possible doses,

---

[32] *Available at* http://www.dhs.state.pa.us/publications/forproviders/schedules/drugfeeschedule/index.htm?Result=true&NDC=00169643910.

[33] *Available at* https://www.emedny.org/info/fullform.pdf.

[34] *Available at* www.txvendordrug.com/formulary/FormularyResults.asp?sort=Descr&NDC=&Descr=lantus&MKID=&submit=Search.

[35] *Available at* http://www.hca.wa.gov/medicaid/pharmacy/documents/current_ncpdp_billing_standards.pdf.

the practitioner must provide clear instructions for the patient, and the patient's dose may be adjusted frequently over the course of the disease.

55.     When a pharmacist receives a practitioner's order for insulin, he or she must determine how much to dispense to comply with the practitioner's directions. To do so, the pharmacist must first multiply the patient's total daily dose by the days' supply to be dispensed. The days' supply to be dispensed will depend on any instructions on this issue found in the practitioner's order, any limits on days' supply in the patient's health insurance plan, and, in the case of Walgreen's and many other retail pharmacies, a policy that encourages pharmacists to bill Medicare Part D for 90 day supplies of insulin and other medication taken for chronic conditions. If a patient required 35 units per day, a 30-day supply, properly determined, would be 1,050 units, or 10.5 mL. For the same patient, a 90-day supply, properly determined, would be 3,150 units, or 31.5 mL; and a 100-day supply, properly determined, would be 3,500 units, or 35 mL.

56.     Next, the pharmacist must determine the number of pens needed to provide the mL quantity set forth in the preceding paragraph. Each pen contains 300 units of insulin, or 3 mL. So, to dispense the 10.5 mL required for a 30-day supply for the patient above, the pharmacist should dispense exactly four pens. A 90-day supply for the same patient should require exactly eleven pens—that is, two five-pen boxes plus one individual pen. When dispensing individual pens, pharmacists outside of Walgreen commonly dispense them in a sealed ziplock bag.

57.     Pursuant to corporate policy in place until April 1, 2018, Walgreen's pharmacies dispensed only unopened five-pen boxes, regardless of whether this results in the dispensing of more medication than what was prescribed for the days' supply stated on

the claim to the Government. Specifically, Walgreen's company-wide dispensing and billing software prevented its pharmacists from dispensing or billing for insulin pen product in quantities of pens that are not multiples of fifteen mL, i.e., the amount contained in one box. Thus, the Walgreen's dispensing and billing software required a pharmacist seeking to dispense and bill for insulin pens to enter, in a field on the pharmacist's computer screen, the total number of milliliters of an insulin pen product he or she sought to dispense; and, if a pharmacist tried to enter any quantity other than a multiple of fifteen mL, the Walgreen's software alerted the pharmacist with a pop-up window, which stated: "The quantity entered is less than the minimum dispensing quantity . . . . Would you like to change it?" If the pharmacist did not change the quantity, a second pop-up appeared, stating: "Quantity entered is wrong. Change quantity to multiple of package size." The pharmacist could not proceed to dispense and bill for the product unless and until he or she changed the quantity to a multiple of fifteen mL.

58. Because of the high variability in individual patient doses, however, for many patients a full carton of insulin pens was more than what was needed for a 30-day or even a 90-day supply, common insurance company limits on the quantity that a pharmacy may charge to insurance for a single fill of medication. Walgreen's policy against dispensing individual insulin pens meant that pharmacists routinely ended up dispensing excessive amounts of insulin when they dispensed full boxes of pens, understating the days' supply to payers on claims forms seeking payment, and, as a result, overbilling government and other health plans. Walgreen also employs "automatic refill" and "refill reminder" practices for customers taking medication for chronic conditions such as diabetes. These automatic refills and refill reminders are triggered by the expiration of the

"days' supply" that Walgreen enters on the claim to insurance for the prior fill because Walgreen enters this same "days' supply" into Walgreen's computer system. Walgreen automatically refills insulin prescriptions for beneficiaries of Medicare Part D and certain managed care plans and makes refill reminder calls to all insulin customers. Because Medicare Part D, Medicaid, and other government health plan beneficiaries pay minimal co-pays, these customers are particularly inclined to pick up or re-order their insulin when prompted to do so by Walgreen. These automatic refill and refill reminder practices consequently have resulted in Walgreen dispensing additional fills of insulin substantially prior to the time that customers have used up their insulin from the prior fill.

59.     Thus, in the case of health plans such as Medicaid managed care that will pay for no more than 30 days of medication at a time, the excessive dispensing and billing resulted from the fact that a single 15 mL box of insulin pens will often last patients significantly more than 30 days if taken as directed by their physician. Without the ability to dispense and bill for less than a box, the pharmacist often had to misrepresent the days' supply as being a 30-day supply in order to get Medicaid or the other insurance plan with a 30- day supply limit to pay.

60.     In the case of Medicare Part D, the excessive dispensing and billing often resulted from a Walgreen "Go 90" policy that encourages pharmacists dispensing insulin and other medication for chronic conditions to bill Medicare Part D for 90 days at a time unless the prescriber has specified a lesser days' supply. Because a 90-day supply of insulin, computed according to the doctor's directions for use, will rarely correspond to an exact multiple of 15 mL, the Walgreen's "Go 90" policy, when combined with the Walgreen's prohibition on dispensing individual pens, meant that a pharmacy often ended

up dispensing excessive amounts to Medicare Part D beneficiaries.  To be able to bill Medicare Part D for a supposed 90-day supply in conformity with corporate policy, the pharmacist was forced to "round up" the prescribed quantity to a multiple of 15 mL and then misrepresent on the claim form that the amount dispensed is a 90-day supply.

61.     In yet other cases, excessive dispensing and billing of government health insurance plans took place because the physician had requested on the prescription that the patient receive insulin in a quantity that would last a given number of days, yet the Walgreen pharmacist lacked the liberty to dispense anything but round number multiples of 15 mL for the specified period.

62.     For example, if serviced by Walgreen, and assuming that the patient was covered by a Medicaid plan that paid for no more than 30 days of insulin at a time, the patient described in Paragraphs 55 and 56 above would have received a full box of five pens for a 30-day supply, although only four pens were required to fill the prescription. If covered by a Medicare Part D plan, the Walgreen's "Go 90" policy combined with the policy against dispensing individual pens would lead to the same patient receiving three full boxes, or fifteen pens, for a 90-day supply, totaling three extra pens every 90 days. And, if the doctor had requested just a 15-day supply for the patient, the patient would receive a full box of five pens when only two pens were called for.  In each case, the pharmacy would end up understating on the claim form the days' supply dispensed – because, if taken according to the physician's directions, the dispensed medication would last significantly longer than the 30-day, 90 day or 15 day period set forth on the claim form.

63.     Misrepresenting the days' supply on the claim form not only violates the rules of government health programs, it also contravenes the instructions to pharmacies issued by Walgreen's own Pharmacy Benefits Manager (sold in 2011), which directed that the days' supply on a pharmacy claim form should contain the "number of days the medication will last the patient when taken according to directions." *See* Walgreen Health Initiatives, *Pharmacy Manual*, at 16 (rev. Jan. 2011).[36] In the same manual, under the heading "Pharmacy Network Audit and Compliance Program," Walgreen lists "Days' Supply" under the sub-heading "Dispensing Limits" and reiterates that "[t]he days' supply submitted should correlate to the number of days the medication will last the patient when taken according to directions . . . ." *Id.* at 24. The manual also makes clear that all information on pharmacy claim forms should be "**legible**, **accurate**, and **complete**." *Id.* at 14 (emphasis in original).

64.     Because of the policies and practices described above, Walgreen's pharmacies have improperly dispensed, and falsely billed government health programs for vast quantities of insulin pens that were not needed by patients; in each instance, Walgreen falsely represented the "days' supply" dispensed on the claim form, and falsely certified on the provider agreement or claim form that Walgreen was complying with government program rules that:  i) restrict payment to medication dispensed on a prescription; and/or, ii) limit the days' supply that may be dispensed and billed for at one time. In doing so,

---

[36] *Available at* https://www.Walgreenhealth.com/pdf/forms/Revised_Pharmacy_Manual_2010_Revised _04072010.pdf.

Walgreen submitted false claims to government health programs and made false records or statements material to false or fraudulent claims. For example[37]:

- Patient 1 received a prescription for 10 units of insulin per day, injected with the Levemir Flexpen product, *i.e.*, 900 units of Levemir Flexpen insulin every 90 days, that Walgreen designated as Walgreen Rx # 63375-12871. On August 16, 2013, then on November 11, 2013 and then on February 28, 2013, a Walgreen's pharmacy dispensed one box of pens, *i.e.*, 15 mL, or 1,500 units of insulin on each occasion, and falsely reported these amounts to the patient's Medicare Part D plan as a "90 day supply." The patient's Medicare Part D plan paid $126.10, $139.35, and $174.74, respectively, for these dispenses.

- Patient 2 received a prescription for Novolog Flexpen insulin pens that Walgreen designated as Walgreen Rx # 285651-11961. The patient first filled the prescription on October 23, 2013. The practitioner directed the patient to inject a total daily dose of 18 to 30 units, *i.e.*, no more than 1,800 units over 60 days. The Walgreen's pharmacy dispensed two boxes of pens, *i.e.*, 30 mL, or 3,000 units of insulin, and falsely represented to the patient's Medicare Part D plan that this was a 60 day supply. Thus, the patient received 1,200 excess units (*i.e.*, 4 excess pens) on this dispense. The patient then refilled the prescription on December 15, 2013; February 2, 2014; and April 5, 2014. Each time the patient received two full boxes of pens. The patient's Medicare Part D plan paid $546.73, $600.87, $565.82, and $565.82, respectively, for these dispenses.

---

[37] To protect the privacy of patients, Relators have not disclosed certain information, such as the identity of specific patients, their doctors, or their locations, for the example prescriptions set forth herein; the Walgreen Rx # should provide sufficient, particularized information for Walgreen to be able to identify the referenced false claims.

- Patient 3 received a prescription for Humalog Kwikpen insulin pens that Walgreen designated as Walgreen Rx # 195245-2077. The patient first filled the prescription on August 15, 2014. The practitioner directed the patient to inject 10 units three times a day, for a total daily dose of 30 units, and a total 30 day dose of 900 units. The Walgreen's pharmacy dispensed one box of pens, *i.e.*, 15 mL, or 1,500 units of insulin, and falsely represented to Medicaid that this was a 30 day supply. Thus, the patient received 600 excess units (*i.e.*, 2 excess pens) on this dispense. The patient then refilled the prescription on September 9, 2014, and November 20, 2014. Each time, the patient received three full boxes of pens. The patient's Medicaid plan paid $367.06 for each dispense.

- Patient 4 received a prescription for Lantus Solostar insulin pens that Walgreen designated as Walgreen Rx # 354171-11961. The patient first filled his prescription on December 8, 2014. The practitioner directed the patient to inject 18 units once a day, or 1,620 units over 90 days. The Walgreen's pharmacy dispensed two boxes of pens, *i.e.*, 30 mL, or 3,000 units of insulin, and falsely represented to the patient's Medicare Part D plan that this was a 90 day supply. Thus, the patient received 1,380 excess units (*i.e.*, 4 excess pens) on this dispense. The patient's Medicare Part D plan paid $671.42 for this dispense.

- Patient 5 received a prescription for Lantus Solostar insulin pens that Walgreen designated as Walgreen Rx # 190553-2077. The patient first filled his prescription on July 2, 2014. The practitioner directed the patient to inject 15 units once a day, or 450 units every 30 days. The Walgreen's pharmacy dispensed one box of pens, *i.e.*, 15 mL, or 1,500 units of insulin, and falsely represented to

Medicare Part D that this was a 30 day supply. Thus, the patient received 1,050 excess units (*i.e.*, 3 extra pens) on this dispense. The patient then refilled the prescription on October 30, 2014, and again received a full box of pens. The Walgreen's pharmacy billed the patient's Medicare Part D plan $316.03 for each of these dispenses.

• Patient 6 received a prescription for Novolog Flexpen insulin pens that Walgreen designated as Walgreen Rx # 169119-2077. The patient filled the prescription on December 5, 2013. The practitioner directed the patient to inject 10 units three times a day, for a total daily dose of 30 units, or 900 units over 30 days. The Walgreen's pharmacy dispensed one box of pens, *i.e.*, 15 mL or 1,500 units of insulin, and falsely represented to Medicaid that this was a 30-day supply. Thus, the patient received 600 excess units (*i.e.*, 2 excess pens) on this dispense. The patient's Medicaid plan paid $336.67 for this dispense.

## DAMAGES

65.     Through the foregoing conduct, Walgreen has knowingly submitted false claims that have caused the federal-state Medicaid program, in each state in which Walgreen does business, as well as Medicare Part D, FEHBP, TRICARE/CHAMPUS and the VA, to pay for the excessive amounts of insulin dispensed by Walgreen's pharmacies. The United States and the state Plaintiffs have been damaged by the amount paid to Walgreen for insulin pens that should not have been dispensed, either because Walgreen failed to abide by the patients' actual prescriptions, or because Walgreen failed to abide by the government payers' "days' supply" limitations.

66.     Through the foregoing conduct, the Defendant has also knowingly avoided an obligation to repay funds owed the United States and the state Plaintiffs by improperly failing to disclose and return overpayments. The United States and the state Plaintiffs overpaid Walgreen for the pens that were dispensed in excess of the number of pens that should have been dispensed. Walgreen has knowingly retained this difference and failed to disclose or return it.  *See* 42 U.S.C. § 1320a-7k(d) (imposing an affirmative duty on health care providers who bill Medicare or Medicaid to disclose any Medicare or Medicaid overpayments they identify to the government health care program within 60 days of discovery).

## COUNT ONE

(Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*)

67.     This is a civil action by Plaintiffs Adam Rahimi and S. Christopher Schulte, acting on behalf of and in the name of the United States, against the Defendant under the False Claims Act.

68.     Relators re-allege and incorporate by reference paragraphs 1 through 66 as though fully set forth herein.

69.     Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

70.     Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

71.     Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the United States, in violation of 31 U.S.C. § 3729(a)(1)(G).

72.     Based on the foregoing allegations, the United States has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TWO

(California False Claims Act, Cal. Gov't Code § 12650 *et seq.*)

73.     Relators re-allege Paragraphs 1 through 66 inclusive.

74.     Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of Cal. Gov't Code § 12651(a)(1).

75.     Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Cal. Gov't Code § 12651(a)(2).

76.     Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of California, in violation of Cal. Gov't Code § 12651(a)(7).

77.     Based on the foregoing allegations, the state of California has suffered actual damages, with the exact amount to be determined at trial.

## COUNT THREE

(Colorado False Claims Act, Colo. Rev. Stat. § 25.5-4-303.5 *et seq.*)

78.     Relators re-allege Paragraphs 1 through 66 inclusive.

79.     Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of Colo. Rev. Stat. § 25.5-4-305(1)(a).

80.     Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Colo. Rev. Stat. § 25.5-4-305(1)(b).

81.     Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Colorado, in violation of Colo. Rev. Stat. § 25.5-4-305(1)(f).

82.     Based on the foregoing allegations, the state of Colorado has suffered actual damages, with the exact amount to be determined at trial.

## COUNT FOUR

(Connecticut False Claims Act, Conn. Gen. Stat. § 4-274 *et seq.*)

83.     Relators re-allege Paragraphs 1 through 66 inclusive.

84.     Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation Conn. Gen. Stat. § 4-275(a)(1).

85.     Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Conn. Gen. Stat. § 4-275(a)(2).

86.     Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Connecticut, in violation of Conn. Gen. Stat. § 4-275(a)(8).

87.     Based on the foregoing allegations, the state of Connecticut has suffered actual damages, with the exact amount to be determined at trial.

## COUNT FIVE

(Delaware False Claims and Reporting Act, 6 Del. Code § 1201 *et seq.*)

88.     Relators re-allege Paragraphs 1 through 66 inclusive.

89.     Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of 6 Del. Code § 1201(a)(1).

90.     Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 6 Del. Code § 1201(a)(2).

91.     Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Delaware, in violation 6 Del. Code § 1201(a)(7).

92.     Based on the foregoing allegations, the state of Delaware has suffered actual damages, with the exact amount to be determined at trial.

## COUNT SIX

(Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*)

93.     Relators re-allege Paragraphs 1 through 66 inclusive.

94.     Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of Fla. Stat. § 68.082(2)(a).

95.     Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Fla. Stat. § 68.082(2)(b).

96.     Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Florida, in violation of Fla. Stat. § 68.082(2)(g).

97.     Based on the foregoing allegations, the state of Florida has suffered actual damages, with the exact amount to be determined at trial.

## COUNT SEVEN

(Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168 *et seq.*)

98.     Relators re-allege Paragraphs 1 through 66 inclusive.

99.     Defendant Walgreen has knowingly presented or caused to be presented false or fraudulent claims to the state of California, in violation of Ga. Code Ann. § 49-4-168.1(a)(1).

100.     Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Ga. Code Ann. § 49-4-168.1(a)(2).

101.     Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Georgia, in violation of Ga. Code Ann. § 49-4-168.1(a)(7).

102.     Based on the foregoing allegations, the state of Georgia has suffered actual damages, with the exact amount to be determined at trial.

## COUNT EIGHT

(Hawaii False Medicaid Claims Act, Haw. Rev. Stat. § 46-171 *et seq.*)

103.     Relators re-allege Paragraphs 1 through 66 inclusive.

104.     Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of Haw. Rev. Stat. § 46-171(a)(1).

105.     Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Haw. Rev. Stat. § 46-171(a)(2).

106.     Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Hawaii, in violation of Haw. Rev. Stat. § 46-171(a)(6).

107.     Based on the foregoing allegations, the state of Hawaii has suffered actual damages, with the exact amount to be determined at trial.

## COUNT NINE

(Illinois False Medicaid Claims Act, 740 Ill. Comp. Stat. 175/1 *et seq.*)

108.    Relators re-allege Paragraphs 1 through 66 inclusive.

109.    Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of 740 Ill. Comp. Stat. 175/3(1)(A).

110.    Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 740 Ill. Comp. Stat. 175/3(1)(B).

111.    Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Illinois, in violation of 740 Ill. Comp. Stat. 175/3(1)(G).

112.    Based on the foregoing allegations, the state of Illinois has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TEN

(Indiana False Claims and Whistleblower Protection Act,
Ind. Code Ann. § 5-11-5.5-1 *et seq.*)

113.    Relators re-allege Paragraphs 1 through 66 inclusive.

114.    Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of Ind. Code Ann. § 5-11-5.5-2(b)(1) and (b)(8).

115.    Defendant Walgreen has made or used, or caused to be made or used, false records or statements to obtain payment or approval false claims , in violation of Ind. Code Ann. § 5-11-5.5-2(b)(2) and (b)(8).

116.     Defendant Walgreen has made or used, or caused to be made or used, false records or statements to avoid an obligation to pay or transmit property, in violation of Ind. Code Ann. § 5-11-5.5-2(b)(6) and (b)(8).

117.     Based on the foregoing allegations, the state of Indiana has suffered actual damages, with the exact amount to be determined at trial.

## COUNT ELEVEN

(Iowa False Claims Act, Iowa Code § 685.1 *et seq.*)

118.     Relators re-allege Paragraphs 1 through 66 inclusive.

119.     Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of Iowa Code § 685.2(1)(a).

120.     Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Iowa Code § 685.2(1)(b).

121.     Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Iowa, in violation of Iowa Code § 685.2(1)(g).

122.     Based on the foregoing allegations, the state of Iowa has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TWELVE

(Louisiana Medical Assistance Programs Integrity Law,
La. Rev. Stat. Ann. § 46:437.1 *et seq.*)

123.     Relators re-allege Paragraphs 1 through 66 inclusive.

124.     Defendant Walgreen has knowingly presented or caused to be presented false or fraudulent claims, in violation of La. Rev. Stat. Ann. § 46:438.3(A).

125.     Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of La. Rev. Stat. Ann. § 46:438.3(B).

126.     Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Louisiana, in violation of La. Rev. Stat. Ann. § 46:438.3(C).

127.     Based on the foregoing allegations, the state of Louisiana has suffered actual damages, with the exact amount to be determined at trial.

## COUNT THIRTEEN

(Maryland False Health Claims Act, Md. Code Ann., Health-Gen. § 2-601 *et seq.*)

128.     Relators re-allege Paragraphs 1 through 66 inclusive.

129.     Defendant Walgreen Defendant has knowingly presented or caused to be presented false claims for payment or approval, in violation of Md. Code Ann., Health-Gen. § 2-602(a)(1).

130.     Defendant Walgreen knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Md. Code Ann., Health-Gen. § 2-602(a)(2).

131.     Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Maryland, in violation of Md. Code Ann., Health-Gen. § 2-602(a)(8).

132.     Based on the foregoing allegations, the state of Maryland has suffered actual damages, with the exact amount to be determined at trial.

## COUNT FOURTEEN

(Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, § 5A *et seq.*)

133.    Relators re-allege Paragraphs 1 through 66 inclusive.

134.    Defendant Walgreen Defendant has knowingly presented or caused to be presented false claims for payment or approval, in violation of Mass. Gen. Laws ch. 12, § 5B(a)(1).

135.    Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Mass. Gen. Laws ch. 12, § 5B(a)(2).

136.    Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the commonwealth of Massachusetts, in violation of Mass. Gen. Laws ch. 12, § 5B(a)(9).

137.    Based on the foregoing allegations, the commonwealth of Massachusetts has suffered actual damages, with the exact amount to be determined at trial.

## COUNT FIFTEEN

(Michigan Medicaid False Claims Act, Mich. Comp. Laws § 400.601 *et seq.*)

138.    Relators re-allege Paragraphs 1 through 66 inclusive.

139.    Defendant Walgreen has knowingly made, or caused to be made, false representations of material fact for use in determining rights to benefits or payments, in violation of Mich. Comp. Laws § 400.603(2).

140.    Defendant Walgreen, with knowledge of the occurrence of an event affecting its initial or continued right to any benefit or payment, has knowingly concealed or failed to disclose that event with an intent fraudulently to secure the benefit or payment in a greater amount or quantity than is due, in violation of Mich. Comp. Laws § 400.603(3).

141.    Based on the foregoing allegations, the state of Michigan has suffered actual damages, with the exact amount to be determined at trial.

## COUNT SIXTEEN

(Minnesota False Claims Act, Minn. Stat. § 15C.01 *et seq.*)

142.    Relators re-allege Paragraphs 1 through 66 inclusive.

143.    Defendant has knowingly presented or caused to be presented false claims for payment or approval, in violation of Minn. Stat. § 15C.02(a)(1).

144.    Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Minn. Stat. § 15C.02(a)(2).

145.    Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Minnesota, in violation of Minn. Stat. § 15C.02(a)(7).

146.    Based on the foregoing allegations, the state of Minnesota has suffered actual damages, with the exact amount to be determined at trial.

## COUNT SEVENTEEN

(Montana False Claims Act, Mont. Code Ann. § 17-8-401 *et seq.*)

147.    Relators re-allege Paragraphs 1 through 66 inclusive.

148.    Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of Mont. Code Ann. § 17-8-403(1)(a).

149.    Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Mont. Code Ann. § 17-8-403(1)(b).

150.    Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Montana, in violation of Mont. Code Ann. § 17-8-403(1)(g).

151.    Based on the foregoing allegations, the state of Montana has suffered actual damages, with the exact amount to be determined at trial.

## COUNT EIGHTEEN

(Nevada False Claims Act, Nev. Rev. Stat. § 357.010 *et seq.*)

152.    Relators re-allege Paragraphs 1 through 66 inclusive.

153.    Defendant has knowingly presented or caused to be presented false claims for payment or approval, in violation of Nev. Rev. Stat. § 357.040(1)(a).

154.    Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Nev. Rev. Stat. § 357.040(1)(b).

155.    Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Nevada, in violation of Nev. Rev. Stat. § 357.040(1)(g).

156.    Based on the foregoing allegations, the state of Nevada has suffered actual damages, with the exact amount to be determined at trial.

## COUNT NINETEEN

(New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1 *et seq.*)

157.    Relators re-allege Paragraphs 1 through 66 inclusive.

158.    Defendant Walgreen knowingly presented or caused to be presented false claims for payment or approval, in violation of N.J. Stat. Ann. § 2A:32C-3(a).

159.    Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the state of New Jersey, in violation of N.J. Stat. Ann. § 2A:32C-3(b).

160.    Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property the state of New Jersey, in violation of N.J. Stat. Ann. § 2A:32C-3(g).

161.    Based on the foregoing allegations, the state of New Jersey has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TWENTY

(New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.*)

162.    Relators re-allege Paragraphs 1 through 66 inclusive.

163.    Defendant Walgreen has knowingly presented or caused to be presented false claims for payment, in violation of N.M. Stat. Ann. § 27-14-4(A).

164.    Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements to obtain a false or fraudulent claim under the medicaid program paid for or approved by the state of New Mexico, in violation of N.M. Stat. Ann. § 27-14-4(C).

165.    Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements to conceal, avoid or decrease an obligation to pay or transmit money or property to the state of New Mexico, in violation of N.M. Stat. Ann. § 27-14-4(E).

166.    Based on the foregoing allegations, the state of New Mexico has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TWENTY-ONE

(New York False Claims Act, N.Y. State Fin. Law § 187 *et seq.*)

167.    Relators re-allege Paragraphs 1 through 66 inclusive.

168.    Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of N.Y. State Fin. Law § 189(1)(a).

169.    Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of N.Y. State Fin. Law § 189(1)(b).

170.    Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of New York, in violation of N.Y. State Fin. Law § 189(1)(h).

171.    Based on the foregoing allegations, the state of New York has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TWENTY-TWO

(North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 *et seq.*)

172.    Relators re-allege Paragraphs 1 through 66 inclusive.

173.    Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of N.C. Gen. Stat. § 1-607(a)(1).

174.    Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of N.C. Gen. Stat. § 1-607(a)(2).

175.    Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of North Carolina, in violation of N.C. Gen. Stat. § 1-607(a)(7).

176.     Based on the foregoing allegations, the state of North Carolina has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TWENTY-THREE

(Oklahoma False Claims Act, Okla. Stat. Ann. tit. 63, § 5053 *et seq.*)

177.     Relators re-allege Paragraphs 1 through 66 inclusive.

178.     Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of Okla. Stat. Ann. tit. 63, § 5053.1(B)(1).

179.     Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or, in violation of Okla. Stat. Ann. tit. 63, § 5053.1(B)(2).

180.     Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state of Oklahoma, in violation of Okla. Stat. Ann. tit. 63, § 5053.1(B)(7).

181.     Based on the foregoing allegations, the state of Oklahoma has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TWENTY-FOUR

(Rhode Island State False Claims Act, R.I. Gen. Laws § 9-1.1-1 *et seq.*)

182.     Relators re-allege Paragraphs 1 through 66 inclusive.

183.     Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of R.I. Gen. Laws § 9-1.1-3(a)(1).

184.    Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of R.I. Gen. Laws § 9-1.1-3(a)(2).

185.    Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Rhode Island, in violation of R.I. Gen. Laws § 9-1.1-3(a)(7).

186.    Based on the foregoing allegations, the state of Rhode Island has suffered actual damages, with the exact amount to be determined at trial.

### COUNT TWENTY-FIVE

(Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*)

187.    Relators re-allege Paragraphs 1 through 66 inclusive.

188.    Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(A).

189.    Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(B).

190.    Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Tennessee, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(D).

191.    Based on the foregoing allegations, the state of Tennessee has suffered actual damages, with the exact amount to be determined at trial.

### COUNT TWENTY-SIX

(Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code § 36.001 *et seq.*)

192.    Relators re-allege Paragraphs 1 through 66 inclusive.

193.    Defendant Walgreen has knowingly made or caused to be made false statements of material fact to permit a person to receive a benefit or payment that is not authorized or that is greater than the benefit or payment that is authorized, in violation of Tex. Hum. Res. Code § 36.002(1).

194.    Defendant Walgreen has knowingly concealed or failed to disclose information permitting a person to receive a benefit or payment that is not authorized or that is greater than the benefit or payment that is authorized, in violation of Tex. Hum. Res. Code § 36.002(2).

195.    Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Texas, in violation of Tex. Hum. Res. Code § 36.002(12).

196.    Based on the foregoing allegations, the state of Texas has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TWENTY-SEVEN

(Virginia Fraud Against Taxpayer Act, Va. Code Ann. § 8.01-216.1 *et seq.*)

197.    Relators re-allege Paragraphs 1 through 66 inclusive.

198.    Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of Va. Code Ann. § 8.01-216.3(A)(1).

199.    Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Va. Code Ann. § 8.01-216.3(A)(2).

200.    Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the commonwealth of Virginia, in violation of Va. Code Ann. § 8.01-216.3(A)(7).

201.     Based on the foregoing allegations, the commonwealth of Virginia has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TWENTY-EIGHT

(Washington Medicaid Fraud False Claims Act, Wash. Rev. Code § 74.66.010 *et seq.*)

202.     Relators re-allege Paragraphs 1 through 66 inclusive.

203.     Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of Wash. Rev. Code § 74.66.020(1)(a).

204.     Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Wash. Rev. Code § 74.66.020(1)(b).

205.     Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Washington, in violation of Wash. Rev. Code § 74.66.020(1)(g).

206.     Based on the foregoing allegations, the state of Washington has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TWENTY-NINE

(District of Columbia False Claims Act, D.C. Code § 2-381.01 *et seq.*)

207.     Relators re-allege Paragraphs 1 through 66 inclusive.

208.     Defendant Walgreen has knowingly presented or caused to be presented false claims for payment or approval, in violation of D.C. Code § 2-381.02(a)(1).

209.     Defendant Walgreen has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of D.C. Code § 2-381.02(a)(2).

210.    Defendant Walgreen has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the District of Columbia, in violation of D.C. Code § 2-381.02(a)(6).

211.    Based on the foregoing allegations, the District of Columbia has suffered actual damages, with the exact amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Adam Rahimi and S. Christopher Schulte pray for the following relief:

1.    On Counts One through Twenty-Nine, judgment for the United States or the State, as applicable, against the Defendant in an amount equal to three times the damages the federal or state plaintiff government, respectively, has sustained because of the Defendant's actions, plus a civil penalty of $11,000 for each violation;

2.    On Counts One through Twenty-Nine, an award to the Relators for the maximum allowed under the federal or state law under which suit is brought by the Relators on behalf of the federal or state plaintiff, respectively;

3.    Against the Defendant, attorney's fees, expenses, and costs of suit; and

4.    Such other and further relief as the Court deems just and proper.


## DEMAND FOR JURY TRIAL

Relators hereby demand that this matter be tried before a jury.

Respectfully submitted,

_____

Shelley R. Slade (admitted *pro hac vice*)
Robert L. Vogel (SDNY Bar No. RV1527)
VOGEL, SLADE & GOLDSTEIN, LLP
1300 Connecticut Ave., NW, Ste. 701
Washington, D.C. 20036
Tel.: 202-537-5903
sslade@vsg-law.com
rvogel@vsg-law.com

Of Counsel:

Janet L. Goldstein
VOGEL, SLADE & GOLDSTEIN, LLP
1300 Connecticut Ave., NW, Ste. 701
Washington, D.C. 20036
Tel.: 202-537-5900
jgoldstein@vsg-law.com

Attorneys for Adam Rahimi and S. Christopher
Schulte

Dated: November 16, 2018

## **CERTIFICATE OF SERVICE**

On this 16th day of November, 2018, I caused copies of the foregoing First Amended Complaint to be served on plaintiffs the United States, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, New Jersey, Nevada, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, Virginia, and Washington, by sending these items by regular mail (postage prepaid) to each of the persons listed below and addressed as follows:

Li Yu
Assistant U.S. Attorney
Office of United States Attorney
   for the Southern District of New York
86 Chambers Street
New York City, NY 10007

Jessica Hu
Assistant U.S. Attorney
Office of United States Attorney
   for the Southern District of New York
86 Chambers Street
New York City, NY 10007

Jennifer S. Gregory
Deputy Attorney General
California Dept. Justice, Crim. Law Div.
Bureau of Medi-Cal Fraud and Elder Abuse
2329 Gateway Oaks Drive, Suite 200
Sacramento, CA 95833

Hon. Cynthia Coffman
Attorney General for the State of Colorado
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203

Robert B. Teitelman
Assistant Attorney General
Office of Attorney General
   for the State of Connecticut
55 Elm Street
Hartford, CT 06106-1774

Hon. Matt Denn
Attorney General for the State of Delaware
Delaware Department of Justice
Carvel State Building
820 N. French St.
Wilmington, DE 19801

Hon. Karl A. Racine
Attorney General for the District of Columbia
Office of Attorney General
441 4th Street, NW
Washington, DC 20001

Hon. Pam Bondi
Attorney General
Office of Attorney General
   for the State of Florida
Capitol PL-01
Tallahassee, FL 32399-1050

Hon. Christopher M. Carr
Attorney General for the State of Georgia
Office of Attorney General
40 Capitol Square, SW
Atlanta, GA 30334

Hon. Douglas Chin
Attorney General for the State of Hawaii
Office of Attorney General
425 Queen Street
Honolulu, HI 96813

Hon. Lisa Madigan
Attorney General for the State of Illinois
Chicago Main Office
   of Attorney General
100 West Randolph Street
Chicago, IL 60601

Hon. Tom Miller
Attorney General for the State of Iowa
Office of the Attorney General
Hoover State Office Building
1305 E. Walnut Street
Des Moines, IA 50319

Steven Hunt, Esq.
Supervising Deputy Attorney General
Medicaid Fraud Control Unit
Office of Attorney General
    for the State of Indiana
302 W. Washington St., 5th Floor
Indianapolis, IN 46204

Hon. Jeff Landry
Attorney General for the State of Louisiana
Office of the Attorney General
1885 North 3rd Street
Baton Rouge, LA 70804

Hon. Brian E. Frosh
Attorney General for the State of Maryland
Office of Attorney General
200 St. Paul Place
Baltimore, MD 21202

Lisa Bailey, Esq.
Assistant Attorney General
Office of the Attorney General
    for the State of Massachusetts
1350 Main Street, 4th Floor
Springfield, MA 01103

Hon. Bill Schuette
Attorney General for the State of Michigan
Office of Attorney General
G. Mennen Williams Building, 7th Floor
525 W. Ottawa P.O. Box 30212
Lansing, MI 48909

Hon. Lori Swanson
Attorney General for the State of Minnesota
Office of Attorney General
1400 Bremer Tower
445 Minnesota Street
St. Paul, MN 55101

Hon. Tim Fox
Attorney General for the State of Montana
Office of the Attorney General
215 N. Sanders, Third Floor
PO Box 201401
Helena, MT 59620-1401

Nina D. Bonner
Deputy Attorney General
Medicaid Fraud Control Unit-FCA Unit
Office of Attorney General
    for the State of New Jersey
25 Market Street, P.O. Box 095
Trenton, New Jersey 08625-0085

Hon. Adam P. Laxalt
Attorney General for the State of Nevada
Office of Attorney General
100 N. Carson Street
Carson City, NV 89701

Hon. Hector Balderas
Attorney General for the State of New Mexico
Office of the Attorney General
Litigation Division
408 Galisteo Street
Santa Fe, NM 87504

Alee N. Scott
Special Assistant Attorney General
Medicaid Fraud Control Unit
Office of the Attorney General
    for the State of New York
120 Broadway, 13th Floor
New York, NY 10271

Hon. Josh Stein
Attorney General for the State of North Carolina
Office of Attorney General
9001 Mail Service Center
Raleigh, NC 27699-9001

Hon. Mike Hunter
Attorney General for the State of Oklahoma
Office of Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

Hon. Peter F. Kilmartin
Attorney General for the State of Rhode Island
Office of the Attorney General
150 South Main Street
Providence, RI 02903

Philip Bangle
Assistant Attorney General
Office of Attorney General
    for the State of Tennessee
P.O. Box 20207
Nashville, TN 37202

Leslie Ann Bridges
Deputy Attorney General
Medicaid Fraud and Integrity Division
Office of Attorney General
    for the State of Tennessee
P.O. Box 20207
Nashville, TN 37202

Greg T. Kinskey
Assistant Attorney General
Office of Attorney General
    for the State of Texas
Civil Medicaid Fraud Division
P.O. Box 12548
Austin, TX 78711-2548

Hon. Mark R. Herring
Attorney General for the State of Virginia
Office of Attorney General
900 East Main Street
Richmond, VA 23219

Sarah Parkman
Assistant Attorney General
Medicaid Fraud Control Unit
Office of the Attorney General
    for the State of Washington

P.O. Box 40144
Olympia, WA 98504

Carrie L. Bashaw
Senior Counsel
Medicaid Fraud Control Unit
Office of the Attorney General
    for the State of Washington
P.O. Box 40144
Olympia, WA 98504

Hon. Thomas J. Donovan Jr.
Attorney General for the State
    of Vermont
Office of the Attorney General
109 State St.
Montpelier, VT 05609-1001

-

_____

Shelley R. Slade